### RYLEE v. RYLEE.*

(In banc. April 26, 1926.)

[108 So. 161. No. 25148.]

1. DIVORCE. *Bill for divorce on ground of desertion, not alleging change of conditions since adjudication for defendant in prior suit on same ground, held subject to plea of res judicata.*

   Bill for divorce on ground of desertion, not alleging change of conditions since in prior suit on same ground it was adjudged defendant was not in fault in original separation, and was entitled to separate maintenance, is subject to plea of *res judicata.*

2. DIVORCE. *Cause of action held stated by second bill for divorce for desertion, alleging bona-fide offers of reconciliation, refused by defendant, more than two years after adjudication for defendant in first suit.*

   Cause of action is stated by bill for divorce for desertion alleging that, subsequent to adjudication in prior suit on the same ground, defendant was not in fault, and was entitled to separate maintenance, and more than two years before bringing second suit complainant made repeated *bona-fide* offers of reconciliation, all of which were refused by defendant.

   McGOWEN, J., dissenting.

*Corpus Juris-Cyc References: Divorce, 19CJ, p. 112, n. 58; p. 177, ns. 87, 95.

APPEAL from chancery court, Tallahatchie county, second district.

HON. C. L. LOMAX, Chancellor.

Suit for divorce by W. J. Rylee against Mrs. Imogene Rylee. Bill dismissed, and complainant appeals. Reversed and remanded.

*J. J. Breland,* for appellant.

I.   The court below erred in sustaining the defend-
ant's special plea of *res adjudicata* to complainant's
original bill filed herein.   The proceedings in the first
suit are not *res adjudicata* of the appellant's present
bill of complaint.   The first bill sued the appellee for
divorce on the ground of desertion for the two years
next before the filing of the first bill, October 2, 1917,
and the second bill is a suit for divorce against the ap-
pellee on the grounds of desertion for the two years
next before the filing of the present bill, February 22,
1922.

In order for the first bill to be *res adjudicata* to the
second suit, the parties in both suits must be the same,
the subject matter of both suits the same, and the cause
of action in both suits the same.   See *Adams* v. *Y. & M.
V. R. R. Co.,* 77 Miss. 194, 24 So. 200.   The parties were
the same in both suits, and the subject matter was the
same in both suits, but the cause of action was wholly
different.

The test in this state as to whether one suit is *res ad-
judicata* of another suit is laid down by Chief Justice
SMITH in *Hardy* v. *O|'Pry,* 102 Miss. 197, 59 So. 73.

Where one suit for divorce has been denied, and where
enough has occurred since rendition of first decree to
entitle to relief, a divorce will be granted in the subse-
quent proceeding. See 9 R. C. L. 463, par. 276, citing
*Ford* v. *Ford,* 25 Okla. 785, 108 Pac. 366; 27 L. R. A. (N.
S.) 856.

It is a general rule, so far as we have been able to
find, that when the wife leaves the husband because of
the husband's mistreatment of her, when the husband re-
forms and this is brought to the attention of the wife
and the husband has exhausted all reasonable efforts to
right the wrongs and reasonably assures the injured
spouse that there will be no recurrence of the cause which
induced separation, then if she wilfully and obstinately
142 Miss.—53.

refuses to return to the husband's domicile, this refusal on her part will constitute desertion. See *Hill* v. *Hill,* 62 Fla. 943, 56 So. 941, 39 L. R. A. (N. S.) 1117; *Hanberry* v. *Hanberry,* 29 Fla. 719; *Carey* v. *Carey,* 73 Cal. 630, 15 Pac. 313; *Hooper* v. *Hooper,* 34 N. J. Eq. (7 Stew.) 93; *Stocking* v. *Stocking,* 76 Minn. 292, 79 N. W. 172; *Hall* v. *Hall,* 65 N. J. Eq. 709; *Lester* v. *Lester,* 66 N. J. Eq. 434, 9 R. C. L. 273, sec. 161, 2 R. C. L. Sup. 788, par. 14, citing *Roberson* v. *Roberson,* 41 Nev. 276, 169 Pac. 33; *Pitts* v. *Pitts,* 91 Conn. 609, 101 Atl. 13, 4 A. L. R. 852. See *Fulton* v. *Fulton,* 36 Miss. 517, 2 Schuler Marriage, Divorce, Separation and Domestic Relations, secs. 1617 and 1630; *Kunz* v. *Kunz* (Minn.), 189 N. W. 447, 25 A. L. R. 1045.

II. The rule is well recognized that where the wife has obtained a decree of separate maintenance, then rejects her husband's offer of reconciliation made in good faith and refuses his request to return to him and continues such refusal for the statutory period of desertion, she herself is guilty of desertion and her husband is entitled to a divorce on this ground. 19 C. J., p. 67, sec. 126, see note 61, p. 68, citing *Appleton* v. *Appleton,* 97 Wash. 199, 166 Pac. 61, 66 Minn. 61. See, also, *Kunz* v. *Kunz,* 25 A. L. R. at pp. 1048-1049 and note. It was the duty of the appellee to return to her husband, the appellant, as soon as he sincerely repented for his wrong and reformed.

It was the opinion of the chancellor in the court below that once a bill for divorce on the ground of desertion had been dismissed, as was in the case of the appellant, no new statement of facts could arise in the future whereby the original complainant would be entitled to a divorce on the same ground. This proposition does not seem to have been passed upon by our court.

*F. H. Montgomery,* for appellee.

I. *The plea res adjudicata was properly sustained.* The decree in the former suit, which is pleaded in bar in

this cause, judicially determined that the separation of the complainant and defendant on September 5, 1915, was not to be charged to the misconduct of the defendant. The answer and cross-bill in that case alleges that it was caused by the intolerable conduct and mistreatment of the defendant and the children of the complainant and defendant by the complainant. This was the sole issue so far as the bill of complaint in that cause is concerned. Therefore, the decree of the court in that case stands as an adjudication that the separation of the complainant and defendant was not caused by any misconduct upon the part of the defendant, but was attributable solely to the misconduct of the complainant. This decree in the former case is *res adjudicata* of all issues involved in that case. 9 R. C. L., p. 459, sec. 270.

If the parties separated on September 5, 1915, and have been continuously separated since that time, the separation is an entirety. If they had decided, after the decree in the first case, to resume marital relations and had for a time lived together and then another separation had occurred, there might be some logic in the contention of the complainant. But where the separation has been continuous since 1915 and the decree of the court in 1918 adjudicated that the separation was lawful so far as the defendant was concerned, it is difficult for me to perceive at what stage this continuous separation became unlawful upon the part of the defendant.

No overt act has been committed by the defendant since that time, but her conduct has merely maintained the *status* of the parties as it existed on that day. For these reasons we say that the plea of *res adjudicata* was a complete defense to the bill in this case and no replication having been filed to the same it was proper to dismiss the bill on this account.

II. *The court below was correct in overruling complainant's motion to amend his original bill.* When the courts sustained the sufficiency of the plea of *res adjudicata*, the complainant asked leave to amend his bill

by alleging that since the decree of the court on June 8, 1918, the complainant had solicited the defendant to return to him, to live with him and re-establish the marital relation, and, therefore, upon the refusal of the defendant to accede to these requests, the defendant became the wrong-doer in the premises and her continued refusal to return to the complainant constitutes willful, continued and obstinate desertion and a just cause for divorce.

None of the cases cited touch the point in issue here. In none of them had there ever been a divorce proceeding between the parties and no adjudication of their cause by a court of competent jurisdiction. In the court below the defendant relied upon the decision of the supreme court of the United States in *Harding* v. *Harding,* 49 L. Ed. (U. S.) 1067. In that case every question in the case at bar was decided adversely to the contention of the complainant in this case.

III. *Offer of reconciliation to be effective must have been made before rights of defendant accrued.* It is universally held that in order for an offer of reconciliation to be effective to place the other spouse in the wrong and in the attitude of deserter, the offer of reconciliation must have been made before the statutory period had elapsed and the right of the deserted spouse had accrued.

There was a decree of the court entered more than two years after the separation, adjudging complainant to have been the wrongdoer and the separation of defendant from him to have been lawful. For that reason the proposed amendment did not help the cause of complainant and was properly disallowed by the court. 9 R. C. L., p. 373; *Allen* v. *Allen,* 84 A. S. R. at p. 138 and note. To the same effect see note to *Hill* v. *Hill,* 30 L. R. A. (N. S.) 1119; *Benkert* v. *Benkert,* 32 Cal. 1 467; *Bovaird* v. *Bovaird,* 78 Kan. 315, 96 Pac. 666.

Under our divorce statutes two years desertion gives the unoffending spouse the right to divorce. At the end

of the two years the right accrues and is a vested right whether exercised or not.

Argued orally by *J. J. Brelard,* for appellant, and *F. H. Montgomery,* for appellee.

COOK, J., delivered the opinion of the court.

On the 2d day of October, 1917, the appellant, W. J. Rylee, filed his bill for divorce against his wife, the appellee, alleging as a ground for divorce, willful, obstinate, and continuous desertion for a period of more than two years preceding the filing of the bill. To this bill the appellee filed her answer, denying the grounds for divorce alleged in the bill, and averring that her separation from the appellant was due solely and alone to the ill treatment of herself and children by the appellant, and misconduct on his part, persisted in to such an extent, and for such a length of time, as to render it impossible for her to live with him. She made this answer a cross-bill, and prayed for temporary and permanent alimony, and for the custody of their minor children, but did not ask for a divorce. On the trial of these issues the appellant's bill was dismissed, and prayer of the appellee's cross-bill was granted.

On February 22, 1922, the appellant filed a second bill, praying for a divorce from appellee on the ground of willful, continued, and obstinate desertion for a period of more than two years next preceding the filing of this bill; the averments of the bill being practically the same as those of the first one, except as to the period of the time covered by the alleged desertion. The appellee filed her answer denying the allegations of the bill of complainant, and averring that her separation from the appellant was caused solely by his misconduct and his ill treatment of her. She also set forth in her answer the former proceedings as an adjudication that her separation from the appellant had not been voluntary, willful,

obstinate and continuous for more than two years before the institution of said suit, and that said adjudication is, and remains, in full force and effect, and is conclusive of the rights of the appellant in respect to all matters and things alleged in the bill in the present case. In a cross-bill she also prayed for temporary and permanent alimony.

The appellee also filed a special plea of *res adjudicata,* alleging that the proceedings in the first suit were an adjudication in bar of the relief sought in the present bill, and that said adjudication was still in full force and effect, and was conclusive of the rights of the appellant in respect to all matters and things alleged in the second bill of complaint.

Appellant set this plea of *res adjudicata* down for hearing on its sufficiency in law, and the court held that the decree in the first suit was a bar to the present suit, and likewise held that it was a bar to any future bill for divorce that the appellant might, or could, bring on the ground of desertion.

Thereupon the appellant filed a motion to be permitted to amend his bill so as to charge that, since the 8th day of June, 1918, the date of the decree in the first suit, he had been leading a correct and proper life, and had been at all times since that date ready, willing, and able to support and maintain the defendant and their minor children; that he had in good faith made to the defendant repeated offers of reconciliation, assuring her that he was then, and had been for a long time prior thereto, living a proper, just, and upright life, and that he was willing, able and eager to support and maintain her and their minor children, and care for them properly, but that the defendant had refused all his offers of reconciliation, and informed him that she never expected to live with him, regardless of the kind of life he might live, and that, during all this time, which was more than two years before the bringing of the suit, the defendant had willfully, continuously, and obstinately refused to

return and live with the complainant as his wife. The court below held that this proposed amendment was insufficient to state a cause of action, and refused to permit the amendment, and entered a final decree awarding the defendant alimony, and dismissing the bill of complaint.

The averments of the bill of complaint in the first suit are practically identical with those of the original bill in the second suit. The grounds for divorce alleged in the two suits are the same, and, since no change of conditions is alleged, the adjudication in the first suit that the defendant was not in default at the time of the original separation, and that she was entitled to separate maintenance, is conclusive of the cause of action alleged in the second suit, and the court committed no error in sustaining the plea of *res adjudicata.*

The next assignment of error urged by counsel is based upon the refusal of the court below to permit the amendment to the original bill, as hereinbefore set out, by which the complainant sought to charge that, since the final determination of the first suit, he had made repeated *bona-fide* offers of reconciliation, all of which had been refused by the defendant.

In the early case of *Kenley* v. *Kenley.* 2 How. (Miss.) 751, the court said that, while mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention or even occasional sallies of passion, if they do not threaten bodily harm, do not amount to that cruelty which will justify a decree for separate maintenance to the wife, yet in the case where the wife had a separate provision decreed to her, upon just grounds of cruelty, "it would be discontinued if the husband should *bona fide* offer to cohabit with her and undertake to treat her kindly for the future." In that case, the proof showed that, after a decree of separate maintenance had been granted, the husband repeatedly invited his wife to return to him, and promised her kind and affectionate treatment, which she refused, and, in

discussing the law and facts there involved, the court continued in the following language:

"It is a just conclusion that from the law and facts here stated that, had there been a separate maintenance decree in favor of the appellee in this case, upon just grounds of cruel treatment, it would be discontinued upon the evidence here adduced, for the reason that in such cases courts of equity will afford the wife no aid whatever to continue her separation from her husband, as it is deemed subversive of the true policy of the matrimonial law, and destructive of the best interests of society."

In the case of *Fulton* v. *Fulton,* 36 Miss. 517, the court said: "Where parties have separated, for any cause, if one of them comes back and offers to renew the matrimonial relations, an end, in a legal point of view, would be put to the separation; as, in all cases, the legal desertion ends with the intent to desert. Bishop on Mar. & Div. section 513. But the offer to return, to have the effect of putting an end to the desertion, 'must be made in good faith, free from improper qualifications or conditions, and really intended to be carried out in its spirit, if accepted.' Id. If the offer to return, on the part of the appellee, was made in good faith, and the appellant, as it is alleged, refused to receive her, his refusal would amount to a desertion on his part, from the time of such refusal, and therefore effectually bar his right to relief."

In the case at bar the proposed amendment to the bill alleged that, subsequent to the rendition of the decree in the first suit, the appellant in good faith requested the appellee to return to him, and promised her kind and affectionate treatment, and that she refused all his offers of reconciliation. The good faith of the appellant's offers can only be determined upon a hearing, but in determining the sufficiency of the proposed amendment it must be accepted that the appellant was honest in his intention to remedy his fault, and that his offers of reconciliation and request to return were made in good

faith, with honest intention to abide thereby, and that the defendant deliberately refused these offers. It is the policy of the law, and is deemed to the best interests of society, to encourage reconciliations and resumption of the marital relations between estranged spouses, and, where one of the contracting parties abandons the other, although the original abandonment may have been justified by reason of the fault of the other, and there may have been as adjudication of that fact, when the offending party repents of the error, and in good faith seeks a reconciliation, and requests that the marital relation be resumed, and this offer and request is deliberately refused, this refusal amounts to a desertion from that time, and, if persisted in for the statutory period thereafter, will entitle the one seeking the reconciliation to a divorce. *Appleton* v. *Appleton,* 166 P. 61, 97 Wash. 199, and authorities there cited.

We think the amendment should have been allowed, and the cause heard upon its merits, and, therefore, the decree of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

McGOWEN, J. I dissent from the view of my brethren in this case, believing that the plea of *res adjudicata* would be good as to the bill amended as proposed, and that the learned chancellor in the court below properly held that the decree denying the divorce first sought to be obtained by the complainant on the ground that the defendant had been guilty of willful, continued, and obstinate desertion for the space of more than two years was a good defense to the second suit on the same ground for divorce; and the court correctly held, in my opinion, that by that decree the living apart of the wife from the husband had the sanction of the law, was justifiable in law; and that the proposed amendment to the second bill for divorce on the same ground of desertion was properly rejected; that the defendant wife was then living apart

from her husband by the sanction of the solemn decree of the chancery court.

I believe that *res adjudicata*—conclusiveness of a judgment in divorce cases—is to be enforced under the well known principles of law as in any. other judgment, and I do not believe it is safe to say that the words or actions of a husband, imputing honesty thereto, still anxious to be rid of the marital tie, anxious to be rid of the alimony and burden placed on him by the decree of the court, can set at naught the former decree of the court to the effect that the offended spouse had a right to leave his bed and board.

For instance, suppose in this case Mr. Rylee had shot his wife, and had seriously wounded her, and he had, in the first instance, filed his bill on the ground of desertion, and she had interposed her answer setting up that fact showing her right to a divorce, but, on account of religious scruples or other commendable motives, she did not desire to have a divorce, nor have her future life besmirched with whatever stigma that might be attached to being a divorced person; that she did not ask for a divorce in the cross-bill, but simply resisted his obtaining a divorce from her, and the court had decreed that under the state of facts the complainant was not entitled to a divorce. Then the husband, with the powerful incentives to be rid of his wife, and to be rid of the burden of supporting her, upon his knees, begs her to return. Can any court say when this testimony is reduced to writing that it is not in good faith? And yet would it not be shocking to say that, having been shot down by a brutal husband, she must suffer the ignominy and disgrace of having a decree go against her because she refused to forgive under such circumstances?

Take another case. Suppose a husband, with witnesses, should find his wife engaged in an act of infidelity to him, and he thereafter refused to consort with her, and, after a period of two years, she files a bill for divorce, alleging the statutory ground of desertion; he files his

answer setting up her infidelity as his reason for leaving her, and. sustains the allegations of his answer, and the court so decrees. Can this offending wife go to him and say:

"I am good now, and I will be good in the future; you must take me back, or in two years from now the court will grant me a divorce?"

The effect of the holding of my brethren, in my opinion, is that the spouse who left bed and board for sufficient reasons could finally by continued institutions of divorce proceedings be nagged and forced into consenting to a divorce by nonresistance.

I do not think the authorities cited in the main opinion should control us in this important matter, because they are not directly in point, and do not undertake to settle the questions here involved. The purpose of *res adjudicata* is to set at rest litigation, and surely it is to the interest of society as well as the purpose of the law to put an end to litigation. Under the main opinion the end of the litigation is in the mind and actions of the original, offending party rather than in the solemn decree of the court.

I do not believe that there can be willful, continued and obstinate abandonment where one lives apart from the other spouse under the sanction of a court decree. This view is sustained in the case of *Weld* v. *Weld,* 7 N. W. 267, 27 Minn. 330, wherein that court said:

"Desertion imports a willful abandonment by one party of the other, and involves a violation of marital duty and obligation on the part of the one guilty of desertion, and there is not such violation where a wife is living apart from her husband under sanction of a court decree."

An obstinate desertion cannot be predicated upon the act of a person whose action is sanctioned by the decree of a court of competent jurisdiction. The general rule is announced in 9 Ruling Case Law, p. 459, section 270, as follows:

"Judgments and decrees in divorce proceedings are within the general rule applicable to a judgment or decree that, when it is sought to be made available in subsequent proceedings between the same parties, it is conclusive and binding on them in regard to all matters shown to have been put in issue or to have been necessarily involved in the former suit and actually tried and determined in it. . . . As between the parties to the proceedings, a valid judgment or decree is conclusive of all charges set forth and facts found or which might have been found, and of defenses raised at the trial."