ETHERIDGE *v.* WEBB, et al.

Division A. Feb. 5, 1951.

No. 37807 (50 So. (2d) 603)

730

**Henry L. Rodgers** and **Boydstun & Boydstun,** for appellant.

Livingston & Fair, and Neal Prisock, for appellees.

**Ethridge, C.**

Appellant attacks a deed executed by his wife to her home. He asserts that he had not abandoned it as his homestead. We hold that he had voluntarily separated from her, and that the conveyance is valid.

R. W. Etheridge, appellant and complainant below, seeks to cancel a deed to a house and lot in Louisville, Mississippi, executed by his wife, Mrs. Bernice Etheridge, appellee and one of the defendants in the trial court. He says that in a legal sense he was living with his wife at the time of the conveyance, their separation being her fault, the property was his homestead, and hence the deed was in violation of Sec. 332, Miss. Code of 1942, which provides that: ''A conveyance, mortgage, deed of trust or other incumbrance of the homestead where it is the property of the wife shall not be valid or binding unless signed and acknowledged by the owner and the husband if he be living with his wife . . ..''

Appellant and Mrs. Etheridge were married in California on November 16, 1933, and have had three children. At that time appellant was serving as an enlisted man in the United States Navy. After twenty-four years of such service, he obtained in 1945 an honorable discharge and a retirement pension from the Navy. Appellant is a native of Winston County, Misssissippi. He and his wife were living in California when World War II began, and shortly after that she with their children moved to

Louisville, Mississippi. For a while she and the children lived in Louisville in the home of a relative of appellant, but after a short time she purchased the home here in question for $2,250.00. Mrs. Etheridge borrowed most of the money to purchase this place, executed a deed of trust to secure that loan, and the deed was made to her as grantee. She made a down payment on the home of $500.00, part of which came from money appellant gave her, and part from money she earned.

During the war and until appellant's discharge from the Navy, Mrs. Etheridge received from appellant monthly allotments of money for the support of herself and her children, but she testified that these funds were not adequate, and that during her entire period of residence in Louisville she had a job supplementing these monthly allotments from appellant.

Shortly after appellant was released from the Navy in 1945, Mrs. Etheridge filed in the Chancery Court of Winston County a bill asking for a divorce from appellant on the ground of habitual drunkenness, for alimony and support of the children, and such other general relief as the court might find to be proper. In that suit, R. W. Etheridge, appellant, filed an answer denying those averments, and alleging that the home in Louisville had been paid for out of money which he sent his wife, and that the deed was made to her with the intent on her part to defraud him out of the property. By cross bill he charged his wife with habitual cruel and inhuman treatment and adultery, and also charged at some length that she had wrongfully ejected him from the home in 1943 when he was on leave, that she had "requested him to pack up his suitcase and leave" the house, and that "under the circumstances and conditions there was nothing for him to do except leave, which he did . . . the cross defendant ordered him to leave his home", and that in 1945 when he was discharged she had taken a similar attitude toward him, "whereupon he left to obtain work at Columbus . . .." The cross bill asked

the court to declare that his wife held title to the property as trustee for appellant. It prayed for a divorce, custody of the children, and an adjudication that Mr. Etheridge was the owner of the property. These averments were denied in the wife's answer to that cross bill.

On September 27, 1945, the court granted the wife in this prior suit temporary alimony and attorney's fees. After a hearing on the merits, the chancery court, on April 4, 1946, made a final decree, in which it granted custody of the children to Mrs. Etheridge, but denied her a divorce because there was "insufficient corroborative evidence." The court dismissed the cross bill of Mr. Etheridge and denied all the relief sought by it. Appellant, in his brief, says that he asked his attorneys to withdraw his cross bill for divorce, but neither this record nor the final decree reflects any withdrawal. It adjudicated that "the complainant and cross defendant is hereby awarded separate maintenance . . ." in the sum of $50.00 a month, payable by the husband to her. It adjudged that she was the owner of the home in question.

About six months thereafter, on October 23, 1946, Mrs. Etheridge, appellee in the present case, conveyed her home to the other appellees herein and defendants below, Earl J. Webb and wife, Mrs. Maude M. Webb. On or about November 13, 1946, R. W. Etheridge instituted the present action against the three appellees, seeking to cancel the 1946 deed. Complainant charged that he was released from the Navy on May 1, 1945, that he returned to live in this home with his wife and children until it became necessary for him to seek work, and that he went to Columbus to take a job, and thereafter his wife refused to permit him to return and live in the house. He charged that he had been wrongfully ousted from the property, and that it was his homestead, and legally he was living on it at the time of the deed. Hence he prayed that the deed should be cancelled, and that the Webbs be required to give him possession of the property.

The Webbs in their answer averred that the decree in the previous suit, which we shall hereafter refer to as the separate maintenance decree, was res judicata as to the present action, and they also adopted the answer of Mrs. Etheridge, in which she denied any wrongful ouster of appellant. She pleaded that he had refused to live in the house, that his absence from the home was voluntary on his part, and that the separate maintenance decree was res judicata on the issues raised in the present bill.

On its original decree herein, the chancery court sustained the plea of res judicata, thereby precluding appellant from producing any evidence, on the issue of alleged wrongful ouster of him, as to events both before and after the separate maintenance decree. On appeal to this Court from that decree it was held that it was error to sustain that plea "since the husband was entitled to prove, if he could, that the property, although belonging to the wife, still constituted the homestead, and that he was living with his wife at the time the conveyance thereof was executed". This Court said that the chancellor had correctly adjudicated "that the property belonged to the wife and that the title thereto should remain in her". It pointed out that the deed was executed several months after the separate maintenance decree, and that therefore that decree could not have adjudicated that appellant "was not living with the grantor as his wife at the time this deed was executed". Hence the case was remanded for testimony and a decision on whether at the time of the deed appellant in fact was living with his wife, and therefore whether the deed was in violation of Code Sec. 332. Etheridge v. Webb, 1948, 204 Miss. 159, 37 So. (2d) 168, 169. That decision did not specifically pass upon the admissibility of evidence as to events occurring prior to the separate maintenance decree.

After this remand, both sides produced testimony on the issue for which the case was remanded. The appellant offered, and the chancery court excluded, consider-

able testimony which appellant tendered as tending to show a wrongful ouster of him by his wife from the home prior to the separate maintenance decree of April 4, 1946. The trial court held that such testimony was inadmissible because the separate maintenance decree was res judicata up to that time on the issue of who was at fault for the separation of appellant and his wife, and that the effect of that decree of April 4, 1946, was to adjudicate, among other things, that as of that time the appellant was the one responsible for and at fault in the separation from his wife. Appellant also presented testimony by himself and five other witnesses which tended to show that he had attempted a reconciliation with his wife after the separate maintenance decree, and that she had wrongfully refused to take him back. Mrs. Etheridge categorically denied any attempt at reconciliation by appellant after the decree of April 4, 1946. She testified that appellant made no claim to any homestead right in the property after that decree, and that appellant never thereafter expressed any intention to her to return and live with her, never attempted any reconciliation, and that in fact he "ignored" her and the children.

The trial court in its opinion held that appellant had failed to show by a preponderance of the evidence that he actually or in legal effect was living with his wife at the time of the deed, and that the parties had not lived together after the decree. These findings were incorporated in the final decree for appellees, in which the court upheld the validity of the deed of October 23, 1946.

Shortly after the execution of that deed, Mrs. Etheridge moved with her children to California and obtained a job in that state. She testified by deposition that it was necessary for her to move because she could not get a job in Louisville which paid her enough money to take care of herself and the children. The separate maintenance decree did not prohibit her from taking the children out of the state. On February 1, 1949, she obtained a di-

vorce from appellant in Nevada, but that divorce is not an issue in this case.

Appellant assigns as error the chancery court's finding that he was not living with his wife when the deed was executed. He asserts that this is against the overwhelming weight of the evidence. No contention is made that in fact he was physically living with her at that time, so this position turns upon whether appellant was separated voluntarily from his wife on the date of the deed.

Appellant also argues that on this latter issue the court erred in holding that the separate maintenance decree of April 4, 1946, had finally adjudicated that up to that time he was at fault, and not his wife, in causing the separation; in sustaining the plea of res judicata to that extent; and in excluding testimony as to what had occurred between him and his wife prior to that day.

The issues therefore are the correctness of the trial court's rulings (1) on the effect of the separate maintenance decree, and (2) on the factual issue of whether appellant in a legal sense was living with his wife when she executed the deed, that is, whether he was voluntarily or by his own fault separated from her at that time.

An analysis of the effect of the separate maintenance decree of April 4, 1946, on the present action necessitates a detailed consideration of the problem. In the original appeal it was held that it did not preclude testimony as to the circumstances existing when the deed was executed. The court specifically observed that the deed was made several months after that decree, and that therefore it could not have adjudicated that appellant "was not living with . . . his wife at the time this deed was executed". Hence the separate maintenance decree did not decide that latter issue. Its effect, if any, is to confine the evidence to a period of time subsequent to its date on the issue of whether appellant had separated voluntarily from his wife at the crucial date. The appellant insists this should not be done because in order for him to show that he was wrongfully ousted from the

homestead, he must retrace the history of his relations with his wife to a time prior to 1946. The ouster occurred before that date, he asserts, and its initiation as well as its continuation up to the deed were all relevant on the major issue.

Appellant would be right in this contention if he had not had a day in court on the issue of voluntary separation vel non up to the date of the separate maintenance decree. ■■ ■ Where a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive between the parties in a subsequent action on a different cause of action. A. L. I., Restatement of Judgments, Sec. 68. This proposition is distinguishable from the effect of a judgment as a merger of the original cause of action in the judgment, or as a bar to a subsequent action upon the original cause of action. In either of the preceding cases the original cause of action is extinguished by the judgment, no matter what issues were raised and litigated in the action. However, where the subsequent action is based upon a different cause of action from that upon which the prior action was based, as is the situation here, the effect of the judgment is more limited. It is conclusive between parties in such a case as to questions actually litigated and determined by the prior judgment. This is the doctrine of estoppel by judgment. Annotation, 138 A. L. R. 346-352. The judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted.

■■ ■ This rationale for the doctrine of collateral estoppel by judgment operates in this case to exclude evidence prior to the separate maintenance decree. Where this issue of voluntary separation and abandonment by the husband has been determined in a court of competent jurisdiction, that question of fact is conclusive up to that date between parties in this subsequent action in which appellant is now asserting that he did not abandon his homestead.

The jurisdictional basis of a separate maintenance decree in chancery is not outlined by statute, but by equitable principles first laid down in Mississippi in Garland v. Garland, 1874, 50 Miss. 694. Complainant's wife sued asking that she be allowed money for separate maintenance of herself, and charging that her husband, the defendant, had deserted her and refused to live with her, and that she was without fault in causing the separation. The Court held that, although there was no original equity jurisdiction to grant such relief, it thought that the law as developed in America should recognize such a right "when she is abandoned and refused support" by the husband. It thought that the requested relief was "a virtual divorce from bed and board by. the act of the husband against the wishes of his wife". The courts will not "aid a wife who voluntarily separates from her husband, neither will they refuse redress when the husband abandons a wife and refuses to maintain her . . ." The power to grant separate maintenance to a wife was based on (a) separation without fault on the wife's part, and (b) wilful abandonment of her by the husband with refusal to support her. These jurisdictional requirements for a separate maintenance decree have continued up to the present time. For example, in Wilson v. Wilson, 1945, 198 Miss. 334, 342, 22 So. (2d) 161, 163, 23 So. (2d) 303, the Court said "that the wife will be denied a decree of separate maintenance where she has left or abandoned her husband and remains away without just cause". To the same effect is Amis, Divorce and Separation in Mississippi (1935), pages 251-260. Of interest in ·this respect is Helping v. Helping, 1922, 50 Cal. App. 676, 195 P. 715 in which the separate maintenance decree was held to be res judicata on the issue of wilful desertion by the husband, in a later divorce suit filed by the husband. The former decree, like the present one, made no express findings of fact on this issue, but the California Court, applying estoppel by judgment, observed that the

statutes of that state made wilful desertion and failure to support a prerequisite to a grant of separate maintenance. It was bound to assume that the trial court found "in the plaintiff's favor upon every issue necessary to be determined in order to support said judgment . . . ." The same jurisdictional prerequisite to a separate maintenance decree exists in Mississippi, as established by our general equity law, These are jurisdictional requirements, and the principle of presumption of correctness of official acts requires us to assume that this prerequisite to a grant of separate maintenance existed when the chancellor executed his decree of April 4, 1946. No proof is made by appellant to the contrary.

This also is in accord with the terms of the separate maintenance decree and the pleadings in that suit. Nor does the denial of the requested divorce to Mrs. Etheridge negative that conclusion. She could not prove habitual drunkenness, but that did not preclude her from showing that her husband had wilfully abandoned her through no fault of her own, and that is what the court had to find in order to decree "that the complainant and cross defendant is hereby awarded separate maintenance . . . ." Furthermore, the same decree provided that "the cross bill of defendant and cross defendant (sic) be and the same is hereby dismissed, and all relief sought thereunder is hereby denied". In that cross bill appellant asked for divorce on the grounds of adultery and habitual cruel and inhuman treatment, and in support of the latter proposition charged that his wife had wrongfully ousted him from their home and refused to let him live there. The court in the separate maintenance decree found that appellant had "not sustained the allegations of his cross bill by his evidence", and dismissed it. Hence one issue in that suit which is reflected in the pleadings before us (the testimony there is not in this record) is that appellant in his cross bill charged, in order to support his allegation of habitual cruel and inhuman treatment by his wife, that Mrs. Etheridge had

wrongfully ousted him from the home and refused to let him return. The decree adjudged that his evidence had not sustained this charge.

Hence the appellant is estopped by the terms of the decree from again contesting the issue of voluntary separation vel non up to the date of the separate maintenance decree. The doctrine of estoppel by judgment precludes that. If circumstances thereafter change, and the parties were living together when the deed was made, or at least if appellant was not at fault in the separation at that date, appellant was free to show that.

This result is also in accord with the basis of earlier decisions from this and other courts. The usual situation has involved a decree of separate maintenance for the wife and a later bill for divorce by the husband based on the charge of desertion of him by the wife. The courts have excluded' evidence of desertion occurring prior to the date of the separate maintenance decree. The present case involves an application of the same principle to a later suit by the husband to cancel a deed to a home owned by his wife. The same factual issue of wilful abandonment vel non was decided previously between the same parties. In Rylee v. Rylee, 142 Miss. 832, 108 So. 161, 162, the husband, in 1917, filed suit for divorce, and on the wife's cross bill the chancery court granted her separate maintenance in June, 1918. In 1922, the husband filed a second bill praying for divorce on the ground of desertion. The wife pleaded the 1917 decree as an adjudication that her separation from her husband was through no fault of her own. The husband filed a motion for permission to amend his bill so as to charge desertion since the date of the 1918 decree, and that he had since that time made repeated offers of reconciliation. The chancery court sustained the plea of res judicata. It also denied the motion to amend, but that holding was reversed on appeal. The court, however, pointed out that the 1918 separate maintenance decree was an ''adjudication . . . that the ·

defendant was not in default at the time of the original separation, and that she was entitled to separate mainte- nance . . . and the court committed no error in sus- taining the plea of res adjudicata''.

Maxey v. Maxey, 1928, 152 Miss. 454, 120 So. 179, 180, involved a situation where the wife sued for separate maintenance and support for children, and the Court refused her any separate maintenance but allowed sup- port for the children. Later the husband sued for di- vorce, and the wife was disallowed a request for alimony pendente lite. There was no change in the situation of the parties since the decree in a separate maintenance proceeding. The Court affirmed the denial of alimony pending suit, and held that ''In the appellant's suit for separate maintenance the court decided that she was not then entitled thereto, and, as no change in the situation of the parties appears, the decree then rendered is res judicata of the appellant's right to a separate mainte- nance here pending the dissolution of the marriage''. It said that the wife was only entitled to support from the husband ''when she continues to live with him, provided he is willing for her to, and so acts that she can, so do''. Both of these earlier decisions applied the doctrine of estoppel by judgment.

Wilson v. Wilson, 1945, 198 Miss. 334, 22 So. (2d) 161, modified in 198 Miss. 334, 23 So. (2d) 303, involved a case where the parties were married in 1928, and in 1942 the wife filed a bill for divorce, but shortly thereafter dismissed it. In 1943 she sued for separate maintenance only and the husband by answer contended that she had deserted him. On September 16, 1943, the court granted the wife separate maintenance, and no appeal was taken from this decree. On November 26, 1943, the husband sued for divorce on the ground of cruel and inhuman treatment and desertion, and the wife pleaded the sep- arate mainenance decree as res judicata. The trial court denied the divorce on the ground of cruelty, and granted it for desertion. On appeal that was reversed and decree

was entered for the wife. It was said that "The determinative issue before the court in a separate maintenance suit . . . was . . . whether the wife was living apart from her husband, at the date of the decree in that suit, without legal justification . . . The court granted her a decree and this under the law was an adjudication that at the date of that decree she was not then a deserter . . ." Appellant undertakes to distinguish this case from the present one on the ground that the present separate maintenance decree was simply a decree for alimony, and under Winkler v. Winkler, 1913, 104 Miss. 1, 61 So. 1, the Court can decree alimony to a wife, even though the husband is granted a divorce. Therefore, it is argued, Code Sec. 2743, authorizing this procedure, is relevant here, and all the decree of April 4, 1946, did was to grant her alimony under that statutory authority. Hence it is said that this decree is not res judicata on the issue of voluntary separation vel non. But the decree specifically refers to "separate maintenance" to the wife, and it does not make express provision for support for the children, which is a separate concept and remedy. A divorce was not granted to the husband, which is a prerequisite to the Winkler rule. Nor does the erroneous reference in the decree of September 27, 1947 to "alimony" granted in the decree of 1946 change the nature of the relief allowed there. It must be interpreted from its terms. For later opinion on attorney's fees, see Wilson v. Wilson, 1947, 202 Miss. 545, 32 So. (2d) 688.

Wilson later filed a suit for divorce for desertion commencing after the separate maintenance decree. The wife's demurrer to that bill was overruled, and an appeal was taken from that action in Wilson v. Wilson, 1947, 202 Miss. 540, 32 So. (2d) 686, 687. The Court held that the demurrer was properly overruled and again remanded the cause. In referring to the meaning of the previous decision in the Wilson case, the Court said that "the suit for separate support and maintenance was res judicata

of the fact that she had not deserted him and that their living apart was not without justification so far as she was concerned". Concerning the immediate case, the Court said: "As we understand the bill of complaint, the divorce is sought on the ground of desertion by the wife since September 16, 1943, inasmuch as her absence from home prior to that date has been finally adjudicated not to have been wrongful or without justification. If this be true, then she will be able, under the plea of res judicata, to introduce in evidence the former proceedings so as to limit the issue to what has transpired since September 16, 1943, under the well-settled law of the case."

Clearly the effect of the Wilson cases is that the separate maintenance decree made res judicata the issue of wrongful abandonment of the wife by the husband up to that time, and under the doctrine of estoppel by judgment it precluded a retrial of the facts passed upon in the former decree.

The Wilson case was followed in 1949 by Van Norman v. Van Norman, 205 Miss. 114, 38 So. (2d) 452, 454. The wife, in September, 1944, obtained a separate maintenance decree against her husband, from which no appeal was taken. In December, 1946, the husband filed suit against his wife alleging that on or about February 10, 1944, his wife had ordered him to leave their home and refused to live with him, and that this and other actions constituted cruel and inhuman treatment. He also charged desertion. The court pointed out that the allegations "had their origin, prior to the decree in the separate maintenance suit". It cited with approval the Wilson case and said that "The decree in favor of the wife necessarily conclusively settled that the separation was for cause and was without fault on the part of the wife and therefore was not a wilful desertion by the wife, of her husband . . . and consequently the decree in the separate maintenance suit is res adjudicata . . ."
Also in accord on this proposition is a detailed discussion

in 42 C. J. S., Husband and Wife, Sec. 627, pp. 276-278, citing numerous cases from other states.

 ██ The remaining issue is whether there is sufficient evidence to support the chancery court's finding that appellant was not living with his wife when the deed was executed within the terms of Code Sec. 332. That statute provides that a conveyance "of the homestead where it is the property of the wife shall not be valid or binding unless signed and acknowledged by the owner and the husband if he be living with his wife . . ." Also relevant is Code Sec. 328, which provides that "Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed." The test is whether the husband has abandoned the conjugal relation with his wife and occupancy of the property. Gardner v. Cook, 1934, 173 Miss. 244, 158 So. 150. Of course the wrongful ouster of a spouse does not constitute a wilful abandonment. Scott v. Scott, 1896, 73 Miss. 575, 19 So. 589. However, if a spouse voluntarily separates from the other and abandons the intention of living with him or her through no fault of the latter, he or she has abandoned any homestead rights under Sec. 332. Sylvester v. Stevens, 1939, 186 Miss. 503, 191 So. 483. And an abandonment of homestead may be obtained by a free and voluntary separation of the parties. Lewis v. Ladner, 1936, 177 Miss. 473, 168 So. 281, 172 So. 312; Board of Mayor and Aldermen of Town of Booneville v. Clayton, 1929, 155 Miss. 428, 124 So. 490. In Philan v. Turner, 1943, 195 Miss. 172, 13 So. (2d) 819, 821, the test was said to be whether "the husband was away from the homestead with the mature intention not to return to it . . ."

We think the facts here were adequate to support the chancellor's finding that appellant had no homestead rights in his wife's property on the date of the deed.

The decree of the chancery court is therefore affirmed. Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.