330 So.2d 260 (1976)
William Parham BRIDGES
v.
Mrs. Loris C. BRIDGES.
No. 48588.
Supreme Court of Mississippi.
April 13, 1976.
*261 W.E. Gore, Jr., John R. Countiss, III, Jackson, for appellant.
Young, Young & Scanlon, Jackson, for appellee.
Before GILLESPIE, ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Appellee filed suit against appellant in the Chancery Court of the First Judicial District of Hinds County, seeking separate maintenance, including construction of a new home, custody of and support for the minor child of the parties and reasonable attorney's fees. Appellant denied the material allegations of the bill and filed a cross-bill for divorce on the ground of desertion.
The chancellor entered a decree ordering appellant (1) to construct a new home costing not less than one hundred thousand dollars ($100,000.00) nor more than one hundred twenty-five thousand dollars ($125,000.00) on property of appellee in Eastover and permitted him to place a first mortgage not exceeding fifty thousand dollars ($50,000.00) on the same, appellant to pay the installments on the mortgage; (2) to pay the last installment on appellee's Eastover property when due; (3) to sell the jointly-owned home of the parties on Reddoch Drive and apply the proceeds to the construction of the new home; (4) to pay all monthly installments on the Reddoch home, including insurance and taxes, as well as all insurance and taxes on the new home to be constructed; (5) to pay to appellee the sum of six thousand dollars ($6,000.00) with which to discharge her accumulated debts and to pay the amount of bills incurred by appellee for herself and their minor child between March 26, 1974 and August 5, 1974, not to exceed three thousand dollars ($3,000.00); (6) to make available to appellee for her use and at appellant's expense his yacht and personnel and facilities attendant thereto on a reasonable basis consistent with that she enjoyed prior to the separation; (7) to make available to appellee the facilities heretofore utilized by her at five social clubs, but not exceeding charges of one hundred dollars ($100.00) per month at each club; (8) to make available to appellee every third year a new automobile in the price range of a Thunderbird and with appellee haveing exclusive use of the 1974 Thunderbird now operated by her; (9) to pay the sum of three thousand dollars ($3,000.00) per month additional support for appellee and the minor child and to pay school expenses and other expenses for said child; (10) to pay the balance of appellee's attorney's fees in the amount of two thousand nine hundred sixty-nine dollars and ninety-eight cents ($2,969.98).
Appellee was granted custody of the minor child with reasonable visitation rights to appellant. She was ordered to convey unto appellant an undivided one-half (1/2) interest in her Eastover property upon which the new home was ordered to be constructed. No relief was granted under the cross-bill.
Appellant assigned nine errors in the decree of the court, but waived four of them by failing to brief and argue same.

I.
The court erred in entering a decree of separate maintenance for appellant.
*262 Appellant contends that the court should not have decreed separate maintenance because he had not refused to support appellee and that, in fact, she was provided with more of the luxuries of life and had greater financial means and a higher standard of living than most women.
True, appellee had a comfortable home in which to live. Appellant had given her nine hundred dollars ($900.00) per month since their separation in October, 1971. She had charge accounts and enjoyed benefits of many social clubs, all paid for by appellant. She had a Thunderbird automobile provided by appellant. Without question, during the period of the separation from a financial standpoint, she has lived higher and better than most women.
However, the evidence reflects that prior to the suit, appellant had begun to restrict appellee in the things to which she had become accustomed. Part of her bills were sent back to her unpaid. Appellant wrote a letter to Mrs. Bridges' doctor telling him that he would no longer be responsible for her medical bills. He stopped paying her psychiatric bills. He required her to return her air travel card and stopped her charging privileges at the Broadwater Beach Hotel. Appellee testified that she was no longer able to live in the manner she had become accustomed and that she no longer had a right to anything; that appellant threatened to take away from her the things he had previously provided, and that he proceeded to do so. She instituted the suit because "I prefer the security of knowing what I can and can't do."
In Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603 (1951), this Court said:
"... The power to grant separate maintenance to a wife was based on (a) separation without fault on the wife's part, and (b) willful abandonment of her by the husband with refusal to support her. These jurisdictional requirements for a separate maintenance decree have continued up to the present time." 210 Miss. at 743, 50 So.2d at 607.
During the trial, the following stipulation was filed by the parties: "It is stipulated by and between the parties hereto that from August, 1971, to the present time, the defendant has been guilty of adultery with several different women."
Thus, the appellee was justified in separating from appellant. That separation was without fault on her part and his admitted conduct constituted a willful abandonment of the marriage relationship. Then, to what support and maintenance is she entitled from her husband?
Appellant has a net worth of six million dollars ($6,000,000.00). His annual income is in the bracket of two hundred fifty thousand dollars ($250,000.00) to three hundred thousand dollars ($300,000.00) per year. He owned a private Aero Commander type airplane replaced by a Cessna 340. He had a yacht which he kept at the Broadwater Marina and at the Racket Club in Miami. He had a penthouse on the Mississippi Gulf Coast. He permitted his wife to travel without restriction and to shop at exclusive department stores in New York, Chicago, Dallas, New Orleans, Las Vegas, and other large cities. The parties had and enjoyed everything they desired that money could buy. Their standard of living and life style were affluent and luxurious, and, by most standards, extravagant.
Even though appellant gave his wife substantial sums from 1971 to the date of suit, unquestionably her standard of living was far below that standard and style she enjoyed before the separation. The separation having occurred at the fault of appellant, she is entitled to the same standard of living she enjoyed before the separation. Refusal of the appellant to so provide is tantamount to a refusal to support appellee as set forth in Etheridge v. Webb, supra.
The principle of law is stated in Bunkley and Morse's, Amis on Divorce and Separation in Mississippi § 7.04, at 205 (1957):
"Nor should the allowance be so large as to unduly deplete the husband's estate or *263 earning capacity and thus render it impossible for him to comply with the decree. The purpose should be to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered, as she would have received in the home, if the parties had continued normal cohabitation, and the wife had helped in a reasonable way, in view of her health and physical condition. A decree for separate maintenance should not confer on the wife any greater rights than she would have had if the cohabitation had continued. It is merely an enforcement of the same rights which she had before separation."
In Gardiner v. Gardiner, 230 Miss. 778, 93 So.2d 638 (1957), the Court said:
"The jurisdiction of the chancery court to make an allowance to a wife living apart from her husband for her separate maintenance is to be exercised according to equitable principles, and the amount to be allowed in any case in which such allowance may be properly made must be determined according to the facts disclosed by the record in that particular case, and is largely within the discretion of the trial judge. This Court will not undertake to substitute its judgment in such case for that of the chancellor unless it clearly appears that the chancellor has abused his discretion or has failed to apply correctly the equitable principles which govern in such cases." 230 Miss. at 786, 93 So.2d at 641.
We conclude that the chancellor was correct in granting separate maintenance to appellee, and we cannot say that he abused his discretion and was manifestly wrong in allowing Items 2, 4, 5, 7, 8 and 9 set forth hereinabove and in granting custody of the minor child to appellee with reasonable visitation rights to appellant.

III.
The court erred in requiring appellant to build a new home for appellee.

IV.
The court erred in ordering appellant to sell the home occupied by appellee and invest the proceeds in a new home to be constructed, thereby divesting appellee of title to the property by judicial fiat.

VIII.
The finding of the chancellor is against the overwhelming weight of the evidence.
These three assignments of error deal with the decree of the chancellor directing the sale of the home of the parties and the construction of a new home and will be considered together.
The law is settled that a court cannot divest a husband of title to his property by judicial fiat or decree. This is true whether he is the sole owner or owner as tenant-in-common.
In McCraney v. McCraney, 208 Miss. 105, 43 So.2d 872 (1950), we said: "[W]e know of no authority for a court to divest the husband of the title to his property and to vest the title in the wife by judicial fiat or decree... ." 208 Miss. at 107, 43 So.2d at 873. That principle was reaffirmed in Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752 (1955).
In Jones v. Jones, 234 Miss. 461, 106 So.2d 134 (1958), the Court ordered the husband to join in a conveyance of timber jointly owned by him and his wife, the proceeds of the sale to be applied to alimony for the wife. This Court had the following to say:
"We are of the opinion that the chancellor was without authority to require the appellant to join his wife in the execution of a deed so as to convey his one-half interest in the timber to anyone. He could only consider what income she would receive, and what means he would have, for supporting and maintaining her, and he should have left it to the determination of the husband as to how he would raise the funds with which he *264 would meet the payments of alimony." 106 So.2d at 136.
See also Hudson v. Hudson, 284 So.2d 299 (Miss. 1973).
If the Court has no authority to require the husband to divest himself of title to his property, why should it have the authority to require him to invest himself with title to property? We are of the opinion that the same rule applies. Even so, here the order for appellant to divest himself of title to his property and to invest himself with title to other property with the proceeds are so closely related that they must be considered together.
The fact that the parties planned to build a new home before their separation does not mean that those plans could be enforced after separation. While living together, the parties could have decided against building a new home or the husband may have changed his mind and decided not to build it. The court would have had no authority to require him to do so, nor does it have such authority after the separation.
We are of the opinion that the chancellor was in error in ordering appellant and appellee to sell the Reddoch Drive home, in ordering appellee to convey her undivided one-half (1/2) interest in the Eastover property to appellant, and in ordering appellant to construct a new home on the Eastover property. In view of this opinion, the assigned Error No. VIII is disposed of.
There is no merit in appellant's contention that the court erred in declining to grant him a divorce on the ground of desertion. A sufficient answer is the stipulation, supra, entered into by appellant.
The attorney's fees allowed in the lower court amounted to four thousand seven hundred eighty-seven dollars and fifty cents ($4,787.50). The motion for attorney's fees is sustained and fees for services here are allowed in the sum of two thousand four hundred dollars ($2,400.00) being in round figures fifty percent (50%) of the attorney's fees allowed in the trial court.
The decree is affirmed, except it is reversed and judgment entered here as to Paragraphs 2, 3, 5 and 11 of the decree, which require appellant to sell his interest in the Reddoch property, to build a new home on the Eastover property and to make available to appellee the yacht, personnel and facilities attendant thereto. The decree is also reversed and judgment entered here as to that part of Paragraph 4 which orders appellee to execute to appellant a deed conveying to him an undivided one-half (1/2) interest in the Eastover property, and the cause is remanded to the chancellor for the purpose of providing appropriate living quarters for appellee and the minor child, or, alternatively, an allowance for that purpose.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED TO THE CHANCELLOR FOR SUCH OTHER ORDERS WHICH MAY NOT BE INCONSISTENT WITH THIS OPINION.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, and BROOM, JJ., concur.