BRIDGES, P.J.,
for the Court.
¶ 1. On May 14, 2003, Deborah Honea filed a complaint for separate maintenance or, in the alternative, for divorce and other relief against Ron Honea. Ron filed his answer on July 2, 2003. Deborah later withdrew her complaint for divorce. However, Ron subsequently filed his own complaint for divorce. The matters went before the Lee County Chancery Court. In a bench ruling, the chancellor denied Ron’s complaint for divorce and entered a decree of separate maintenance on October 1, 2003. The decree was modified on October 15, 2003. Aggrieved, Ron appeals the decree on the following issues:
I. THE CHANCELLOR ERRED IN AWARDING SEPARATE MAINTENANCE TO DEBORAH HO-NEA IN THAT THERE WAS NO PROOF THAT RON HONEA HAD REFUSED TO SUPPORT HER SINCE THE SEPARATION, AND THEREFORE THE AWARD WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE AWARD OF SEPARATE MAINTENANCE BY THE CHANCELLOR FAILED TO DO “EQUITY” AND WAS CONTRARY TO THE EQUITABLE PRINCIPLES BEHIND THE THEORY OF SEPARATE MAINTENANCE.
III. EVEN IF THE AWARD OF SEPARATE MAINTENANCE WAS APPROPRIATE, THE AMOUNT AWARDED BY THE *1194 CHANCELLOR WAS EXCESSIVE, WAS AN ABUSE OF DISCRETION AND WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm the chancellor’s decision.
FACTS
¶ 2. Ron and Deborah Honea were married on July 17, 1993. In 1996, they decided mutually that Deborah would quit her job because Ron’s income was sufficient to support them. The couple did not produce any children, but Ron had children from a previous marriage. Deborah’s relationship with Ron’s children was the source of many of Ron and Deborah’s marital problems. Ron claimed that Deborah asked him to choose between a relationship with his children or one with her. The couple separated in December of 2000. Ron claimed that he decided to leave Deborah because he did not want to lose any more time with his children.
¶ 3. Ron moved out of the marital home and initially into a rental home in Oxford, Mississippi. Ron later moved to Montana. Deborah testified that she had access to $3,600 a month before the separation. Immediately after the separation Ron sent Deborah $1,800 a month, which decreased to $1,300 a month in October of 2002. Finally, Ron sent Deborah a letter in which he stated that a woman was living with him, that he intended to marry her, and that in August of 2003 he would reduce Deborah’s support to $500 a month. Ron also declared his intent to cease payment altogether in July of 2004.
¶ 4. Deborah, fifty-one years old at the time of separation, sought employment but found it difficult re-entering the work force after seven years of unemployment. Deborah had previously worked as a secretary but lacked the computer skills and education to be re-employed in that field. Deborah worked for the Lee County Tax Collector, the New Albany School District and then finally with Hickory Springs Furniture Factory where she was laid-off. She then collected unemployment and decided to enroll in school to increase her job skills.
¶ 5. When the matter went before the chancellor, Deborah testified that with her income and even with Ron’s assistance she could not pay the mortgage on the home she shared with Ron, so she moved into a smaller home. Deborah claimed that she was unable to live the same lifestyle because she could not afford to buy new clothes, go on vacations or get her car repaired. Deborah testified that she relied on credit cards to make ends meet. She presented evidence that Ron had almost $4,000 a month in “spendable” income and had significant amounts in savings, checking and IRA accounts. Considering all the factors, the chancellor awarded Deborah $1,800 a month in separate maintenance.
ANALYSIS
¶ 6. We will consider the three issues together since all relate to whether or not the chancellor’s award of separate maintenance was appropriate. This Court will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Townsend v. Townsend, 859 So.2d 370(¶ 7) (Miss.2003) (quoting McBride v. Jones, 803 So.2d 1168(¶ 5) (Miss.2002)).
*1195 I. THE CHANCELLOR ERRED IN AWARDING SEPARATE MAINTENANCE TO DEBORAH HONEA IN THAT THERE WAS NO PROOF THAT RON HONEA HAD REFUSED TO SUPPORT HER SINCE THE SEPARATION, AND THEREFORE THE AWARD WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE AWARD OF SEPARATE MAINTENANCE BY THE CHANCELLOR FAILED TO DO “EQUITY” AND WAS CONTRARY TO THE EQUITABLE PRINCIPLES BEHIND THE THEORY OF SEPARATE MAINTENANCE.
III. EVEN IF THE AWARD OF SEPARATE MAINTENANCE WAS APPROPRIATE, THE AMOUNT AWARDED BY THE CHANCELLOR WAS EXCESSIVE, WAS AN ABUSE OF DISCRETION AND WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 7. It is well-established that “[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.” Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 7.00 (2d ed.1957). The power of the chancellor to grant a wife’s request for separate maintenance is based on: (a) separation without fault on the part of the wife and (b) willful abandonment of the wife by the husband accompanied by a refusal to support her. Robinson v. Robinson, 554 So.2d 300, 303 (Miss.1989); Thompson v. Thompson, 527 So.2d 617, 621 (Miss.1988); Bridges v. Bridges, 330 So.2d 260, 262 (Miss.1976); Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603, 607 (1951). In Robinson, the Mississippi Supreme Court held that the wife need not be totally blameless to allow an award of separate maintenance, but that her (mis)eonduct must not have materially contributed to the separation. Id. at 304, citing King v. King, 246 Miss. 798, 152 So.2d 889, 891 (1963). See also Marble v. Marble, 457 So.2d 1342, 1343 (Miss.1984).
¶ 8. In his first claim of error regarding this issue, Ron cites to Lynch v. Lynch, 616 So.2d 294, 297 (Miss.1993), where the Mississippi Supreme Court set forth that in order to award separate maintenance, a court must find “a separation without fault on the wife’s part, and willful abandonment of her by the husband with refusal to support her.” (emphasis added). The evidence proved that Deborah met the qualifications for separate maintenance in that no fault was alleged on her part for the separation and Deborah believed that the support Ron was willing to provide her was or either would soon become insufficient. Deborah brought her complaint for separate maintenance after Ron had reduced the amount he was willing to give her monthly. Further, Ron had written her a letter in which he declared his intent to reduce the amount by approximately $800 a month and then stop payment altogether a year afterwards. This letter is sufficient to prove Ron refused to support Deborah at a given time and that Deborah’s preemptive complaint in anticipation of his refusal was appropriate.
¶ 9. In the second claim of error regarding this issue, Ron claims the award of separate maintenance was inequitable. According to Ron, the purported goal of separate maintenance is to force the husband to resume the marital relationship by returning home. Kennedy v. Kennedy, 650 So.2d 1362, 1368 (Miss.1995). Debo *1196 rah has twice filed a complaint for divorce, once on the ground of irreconcilable differences to which Ron refused to assent. Deborah withdrew her second complaint for divorce which accompanied the complaint for separate maintenance. Ron believes these complaints for divorce prove that Deborah is unwilling to resume the marital relationship and therefore the equitable remedy, in the form of separate maintenance, is inapplicable;
¶ 10. Separate maintenance does not have a solitary purpose. “It is well-established that ‘[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.’ ” Lynch v. Lynch, 616 So.2d 294, 296 (Miss.1993) (quoting Bunkley & Morse, Amis on Divorce and Separation in Mississippi § 7.00 (2d ed.1957)). Therefore, the award of separate maintenance in this instance is to support Deborah, until their assets and interests are reconciled to each other through divorce proceedings. The award given by the chancellor was fitting with its equitable purpose.
¶ 11. In the third and final claim of error, Ron claims that the separate maintenance award is excessive and does not take Deborah’s wage earning capacity or her actual monthly expenses into consideration and leaves him unable to maintain a descent standard of living for himself. Ron claims that equity demands that the chancellor look at both parties and create a sense of fairness, rather than to use separate maintenance as a means to punish the husband.
¶ 12. The Mississippi Supreme Court, in Thompson, 527 So.2d at 622, quoted Amis, Divorce and Separation in Mississippi (1st ed.1935), and stated:
The purpose [of separate maintenance] should be to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered, as she would-have received in the home, if the parties had continued normal cohabitation, and the wife had helped in a reasonable way, in view of her health and physical condition, to earn her own support and that of the family.
Six criteria must be considered in setting awards of separate maintenance: (1) the health of the husband and the wife; (2) their combined earning capacity; (3) the reasonable needs of the wife and children; (4) the necessary living expenses of the husband; (5) the fact that the wife has free use of the home and furnishings; and (6) other such facts and circumstances. Honts v. Honts, 690 So.2d 1151, 1153 (Miss.1997). While the amount of separate maintenance should provide for the wife as if the couple were still cohabiting, the allowance should not unduly deplete the husband’s estate. Kennedy v. Kennedy, 662 So.2d 179, 181 (Miss.1995).
¶ 13. After the separation Deborah was given exclusive use of the marital home but she had to make the mortgage payments to maintain possession. She had to leave the home because she did not have access to the necessary funds. Deborah was hired by three employers, none' of those positions were long term. -Ron correctly points out that Deborah voluntarily left the first two places of employment; however, Deborah was laid-off from the third job. Thus, Ron’s contention that Deborah voluntarily left employment to benefit her quest for separate maintenance is unfounded. While Ron speculates on Deborah’s strategy to avoid employment, the facts indicate that her decision to leave the third position was not hers to make. That decision was made by her employer. Ron also argues that the award for sepa *1197 rate maintenance does not take Deborah’s actual expenses into consideration. It is true that the chancellor enlarged the figure that Deborah listed as actual expenses. In doing so, the chancellor noted that Deborah did not list any expenses for clothes and that it is impossible that Deborah has not needed and would never need new clothes. Deborah only had $1,300 available in checking or savings at the time of the hearing while her husband had $10,000 in checking, $85,000 in savings and $49,000 in IRAs. Regarding depletion of his estate, Ron states that his “disposable income” per month is $4,261.78. Ron also states his monthly expenses are $2,642.07, an amount which included $1,300 as payment for child support/alimony. Therefore, once the chancellor increased Ron’s separate maintenance payments to $500 above what he already computed, his monthly expenses would be $3,142.07 ($2,642.07 + $500). Ron also claims to pay $700 a month for Deborah’s insurance, college expenses and “extras.” Even if that figure is correct, Ron’s total monthly expenses would be $3,842.07 ($3,142.07 + $700). That would leave Ron $419.71 ($4,261.78-$3,842.07) in disposable income over and above his expenses every month. While that may not be a large amount to some people, it is not a depletion of Ron’s estate. At most, the figure stands until the resolution of the divorce and division of marital property.
¶ 14. Considering all these factors we find the chancellor’s award of separate maintenance was appropriate and was not an abuse of discretion.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.