527 So.2d 617 (1988)
Novella H. THOMPSON
v.
Ray P. THOMPSON.
No. 58153.
Supreme Court of Mississippi.
April 13, 1988.
Rehearing Denied July 20, 1988.
*618 J.P. Coleman, Ackerman, Angelo J. Dorizas, Jackson, John W. Christopher, Canton, for appellant.
Barry W. Gilmer, Gilmer Law Firm, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The central issue of this appeal addresses whether a chancery court may order a division of marital assets after denying both parties a divorce while granting the wife separate maintenance. The Chancery Court of Madison County denied both Novella H. Thompson and Ray P. Thompson their separate requests for a divorce, but granted Mrs. Novella Thompson separate maintenance and ordered division of their marital property.
Novella Thompson, the appellant, assigns the following as error:
(1) The chancery court erred in divesting appellant of her undivided one-half interest in real property.
(2) The chancery court erred in divesting appellant of $750,000 in certificates of deposit on deposit at Trustmark National Bank and adjudicating these certificates to be the property of appellee.
(3) The chancery court erred in failing to enter an order to compel discovery of appellee's assets.
(4) In the alternative, the chancery court committed manifest error in its division of the marital assets of the parties.
(5) In the alternative, the court's allowance of $2,000 per month as separate maintenance is so grossly inadequate as to shock the conscience.

I.
Ray P. Thompson and Novella H. Thompson were married on April 5, 1947 and separated on April 16, 1984. Two daughters were born to the marriage, Nancy  born February 12, 1948 and Barbara  born July 28, 1950. The Thompsons also adopted a son, Pat, who was born on July 2, 1959. Both of the girls born to the *619 Thompsons suffered from Cystic Fibrosis from which illness Nancy died in 1972.
When Mr. Thompson entered into the marriage, the total value of all assets owned by him was approximately $1,500. The majority of those assets was comprised of $1,000 cash given to him by his father as a wedding gift. Mrs. Thompson was possessed of neither real nor personal property at the time that she entered into the marriage with the exception of modest clothing and personal items.
At the commencement of the marriage, Mr. Thompson earned $60.00 per week working in his father's automobile business in Morton, Mississippi. Mr. Thompson worked in various capacities, ranging from salesman to mechanic. Mrs. Thompson was unemployed at the commencement of the marriage and remained unemployed until 1963. In 1955, when Mr. Thompson's father died, the family automobile business passed to him and his brother. In 1957, Mr. Thompson conveyed his 50% interest in the family automobile business to his brother in exchange for $35,000. Mr. Thompson used these funds, together with an additional $30,000 borrowed from the First National Bank in Canton, Mississippi, to purchase the Latimer Ford business in Canton, Mississippi.
During the first five years Mr. Thompson operated the business, he worked extraordinarily long hours in all aspects of the business. By 1959, he had entered into the automobile leasing business and prospered at an unusual rate. While Mr. Thompson was involved in the Ford dealerships in Morton and, from 1958, in Canton, Mrs. Thompson cared for the children and attended to their medical needs. In 1963, Mrs. Thompson began working in the office of the dealership and continued to work there until 1980. From 1963 until 1979 Mrs. Thompson was not paid a salary for her work at the dealership. However, in 1978 she was started on a salary of $750.00 per month and up until 1980 she received a monthly salary which eventually grew to $1,000.00 a month. The dealership was dissolved in February, 1981.
Throughout the marriage, Mrs. Thompson's primary responsibility was the care and maintenance of the minor children of the parties. As a direct result of their illnesses, both Nancy and Barbara required special medications and substantial physical therapy each day. In addition, both girls were subject to extended periods of hospitalization. In 1963, in an effort to alleviate the stress experienced by Mrs. Thompson as a result of caring for the minor children, Mr. Thompson encouraged Mrs. Thompson to participate in the operation of the dealership. As the health of the daughters permitted, Mrs. Thompson would work up to 40 hours per week, closing the books of the business at the end of the month, doing odd filing, and replacing those clerical employees of Thompson Ford on temporary leave.
Although Mrs. Thompson received a salary only in the years 1978, 1979 and 1980, from 1963 until 1980, she received $1,500.00 per month as "rents", a new automobile each year, unlimited gasoline, other weekly sums of money, as well as automobile and medical insurance. For approximately ten to twelve years prior to 1980, Mrs. Thompson received a rent check in the sum of $1,500.00 per month in lieu of a salary. In addition, throughout the period during which Mrs. Thompson was employed by the dealership, Mr. Thompson gave her $100 to $300 per week additional compensation. Mrs. Thompson did not at any time participate in the operation of the leasing business.
While Mr. Thompson was engaged as the Ford dealer in Canton, he started Thompson leasing company, which leased trucks and cars to the Agricultural Cooperative Associations throughout a several state area surrounding Mississippi, with the program being administered primarily by Mississippi Federated Cooperative (hereinafter MFC Services). Mr. Thompson testified that he did very well financially in this endeavor and during the course of his association with MFC Services acquired a substantial amount of debentures in MFC Services. The certificate representing ownership of these debentures was in the name *620 of Mr. and/or Mrs. Ray P. Thompson, as joint tenants with the right of survivorship.
Mr. Thompson would invest 50% of the profits derived from the leasing business in MFC debentures. The remaining profits derived from the business were deposited into Golden Savings Accounts which were styled "Mr. and Mrs. Ray P. Thompson and Nancy Thompson," "Mr. and Mrs. Ray P. Thompson and Barbara Thompson," and "Mr. and Mrs. Ray P. Thompson and Pat Thompson." In 1969, Mr. Thompson conveyed the leasing business to MFC Services in exchange for $60,000.00. He deposited the aforementioned $60,000.00 into the joint savings accounts described above. He deposited an additional $60,000.00 into the accounts when he sold a farm owned by him.
At the end of 1980, Mr. Thompson decided to liquidate the dealership and to sell off all of his assets. On June 1, 1981, Mr. Thompson received a check from MFC Services which represented the value of the debentures, less a discount for cashing them in early, in the amount of $378,708.16 payable to the order of "Mr. and/or Mrs. Ray P. Thompson, J.T.W.S." Mr. Thompson took the check and endorsed it for "deposit only Mr. and Mrs. Ray P. Thompson" and deposited the check to a joint account at the Mississippi Bank and on the same date wrote a check payable to himself in the same amount and used the money for his own purposes.
Mrs. Thompson withdrew the money in the joint savings accounts with Mr. Thompson and deposited the money in six Golden Savings Accounts at the First National Bank of Canton, which was to become a part of the Mississippi Bank of Jackson, and is now a part of the Merchants & Farmers Bank of Kosciusko. These Golden Savings Accounts were in the name of Novella H. Thompson, or Mrs. Ray P. Thompson and/or Barbara Thompson, with each account being opened on July 7, 1972 with initial deposits of $20,000.00 in each. Thereafter each account was increased through the compounding of interest and occasional deposits. In 1980, the total of the six accounts was approximately $180,000.00, at which time Mrs. Thompson withdrew those funds and transferred them to Trustmark National Bank of Canton (formerly Canton Exchange Bank), where the funds were invested in certificates of deposit in the name of Novella H. Thompson or Barbara Thompson with one or two of the CD's being in the name of Barbara Thompson or Novella H. Thompson. Mrs. Thompson continued to invest these funds during the high interest period of early 1980's with the interest, except for living expenses for Mrs. Thompson and her daughter, being compounded upon maturity of the respective certificates.
During the course of the marriage, Mr. and Mrs. Thompson acquired a 3 acre tract of real property upon which is situated part of the operation of the Ford dealership in Canton.
On October 30, 1984, Mrs. Thompson filed a complaint in the Chancery Court of Madison County, seeking a divorce, adjudication of ownership of debentures in the MFC Services valued at approximately $378,000.00, exclusive use and possession of the marital residence, or in the alternative, separate maintenance. Mr. Thompson filed an answer and counter-claim for divorce, seeking an order that Mrs. Thompson deliver ownership and possession of all of the marital assets to him, including $750,000.00 invested in CD's at Trustmark National Bank in Canton and certain items of jewelry. Alternatively, Mr. Thompson prayed that he be granted $500,000.00 in lump sum alimony.
Upon completion of discovery, the case was set for trial before the Chancery Court in Madison County and was tried over a period of five days on July 30, August 2, September 16 and 17, and October 29, 1985. The court found that the $750,000.00 on deposit at Trustmark National Bank in the name of Novella Thompson was the property of Ray P. Thompson; that the funds derived from the sale of the MFC Services debentures was the sole property of Ray P. Thompson; and that the three acre tract of land upon which a part of the Ford dealership is located was the sole property of Ray P. Thompson and therefore the court divested *621 Novella Thompson of any ownership interest in the property. The funds of deposit at the Bank of Eupora in the name of Novella H. Thompson and Georgia B. Huffman, her mother, were held to be the property of Mrs. Thompson and her mother, and the diamond rings and other jewelry received by Mrs. Thompson during the course of the marriage was held to have been given as gifts and were Mrs. Thompson's property. In addition, the court held that Mrs. Thompson should have the exclusive use and possession of the marital residence of the parties in Canton as well as the residence of the daughter. The court further found that the 40 acre tract of property in Webster County, occupied by Georgia B. Huffman, was the property of Novella Thompson as record title indicated. The court finally ordered Ray Thompson to furnish separate maintenance unto Mrs. Thompson at the rate of $2,000.00 per month and ordered him to furnish her an automobile and to maintain the automobile but required Mrs. Thompson to pay for her own insurance and gasoline.

II.
A threshold consideration on this appeal is the nature and function of separate maintenance. Separate maintenance is an old equitable relief available to a wife based upon the marriage relationship. In former times when divorce was socially less acceptable, it was used with more frequency to preserve the marriage relationship and enforce the husband's legal duties to support his wife. However, under today's mores, the divorce is more commonly sought when the marriage has deteriorated. Nevertheless, the purpose of separate maintenance when it is sought has not changed.
A review of the nature and function of the separate maintenance award is needed.
In Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603 (1951), this Court said:
"... The power to grant separate maintenance to a wife was based on (a) separation without fault on the wife's part, and (b) willful abandonment of her by the husband with refusal to support her. These jurisdictional requirements for a separate maintenance decree have continued up to the present time." 210 Miss. at 743, 50 So.2d at 607.
Bridges v. Bridges, 330 So.2d 260, 262 (Miss. 1976).
A decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance for her until such time as they may be reconciled to each other. Amis, Divorce and Separation in Mississippi, § 189 (1st ed. 1935); Bunkley and Morse's Amis, Divorce and Separation in Mississippi, § 7.00 (2d ed. 1957); see Hand, Divorce, Alimony and Child Custody, § 25-1 (2d ed. 1987).
The history of separate maintenance from English common law times and its further development in America is outlined in Garland v. Garland, 50 Miss. 694 (1874). Even though English courts refused to give separate provision for a wife except as incident to other matters such as divorce, the American rule is different. Ball v. Montgomery, 2 Vesey, Jr. 195; Duncan v. Duncan, 19 Vesey, Jr. 396; 2 Story's Eq.Jur., §§ 1422, 1423, 1424, 1426, 1472. The American rule is that a wife who is abandoned by her husband without means of support has a remedy in courts of equity to compel her husband to support her without asking for a decree of divorce. Maintenance was considered to be a vested right arising from the marriage relationship and of the husband's legal duty and contract to support the wife. Garland, supra; Dewees v. Dewees, 55 Miss. 315 (1877); Larson v. Larson, 82 Miss. 116, 33 So. 717 (1903).
Since the initial holding of the 1874 Garland case, the equity courts of this state have permitted maintenance when the wife was separated from the husband with just cause. Bridges v. Bridges, 330 So.2d 260, 262-63 (Miss. 1976). The chancery court has equity powers to determine the amount of maintenance needed for the abandoned wife, together with suit money and attorneys' fees. Johnston v. Johnston, 182 Miss. 1, 179 So. 853 (1938). Maintenance *622 pendente lite is also available as in divorce actions. Id.
The amount and mode of the allowance for separate maintenance was succinctly set forth in Amis, Divorce and Separation in Mississippi, (1st ed. 1935), as follows:
The amount of the allowance, as in awarding permanent alimony, is within the sound discretion of the court, and will not be disturbed on appeal except in case of a clear abuse thereof... . Nor should it include any sum for the support of a child or children of the parties who may live with the wife because the duty of the father to support his children is separate and distinct from the duty of the husband to support his wife. 1 R.C.L. 921 section 70. In all cases due consideration should be given to the right of the husband to live as comfortably as his wife, but not more so, and also to his legal obligation to support his children... . The purpose should be to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered, as she would have received in the home, if the parties had continued normal cohabitation, and the wife had helped in a reasonable way, in view of her health and physical condition, to earn her own support and that of the family. For a decree for separate maintenance cannot confer on the wife any greater rights, than she would have had if cohabitation had continued. It is merely an enforcement, as near as may be, of the same rights she had before the separation. 1 R.C.L. 929 et seq. sections 77, 78; Idem 921 section 70. Nor should the decree award to the wife any part of the husband's estate in fee, except such as may be consumable in its use and necessary for her reasonable support. The legal duty of the husband to support his wife does not require that he convey any of his property to her. During cohabitation the wife has the legal right to live in the husband's home, but he is under no legal duty to convey it to her. And after separation her legal rights are no greater than before. A decree for separate maintenance being, in effect, one for the specific enforcement of the husband's legal duty to support his wife, arising out of the marriage contract, the court should not, under the guise of enforcing that contractual duty, deprive him of any of his lands or other specific property, where not necessary for the enforcement of that duty... .
Id. at § 193.

III.
Turning to the instant case, the chancery court heard and denied both parties their separate requests for a divorce, and no appeal was taken from that adjudication. On the wife's alternative request, separate maintenance to the wife was ordered in the amount of $2,000.00 per month, and on this adjudication there is no appeal of her entitlement to separate maintenance. However, Mrs. Thompson appeals the amount awarded as an alternative contention. But the main thrust of this appeal is Mrs. Thompson's assertion that the chancery court was without authority to order a division of marital assets including divesting of title to real estate. With this assignment, this Court concurs.
The preliminary discussion of the nature and purpose of separate maintenance emphasized that this equitable remedy is for the purpose of compelling the husband to resume cohabitation with his wife or to provide for her separate maintenance. The amount is to be in a sum "to provide, as nearly as possible, the same sort of normal support and maintenance for the wife, all things considered, as she would have received in the home, if the parties had continued normal cohabitation." Id. However, the allowance should not unduly deplete the husband's estate. Id.; Bunkley & Morse's, Amis on Divorce and Separation in Mississippi, § 7.04 (1957). Equitable principles must govern all cases. Gardiner v. Gardiner, 230 Miss. 778, 93 So.2d 638 (1957).
The Amis authority noted further that the wife's award could not confer any greater right than if cohabitation had continued. Bridges v. Bridges, 330 So.2d 260, *623 263 (Miss. 1976). Her entitlement is to a monetary amount for support and does not extend to division of marital assets. It therefore follows that a chancery court may not divest title to real estate from the husband and invest it in his wife. Jones v. Jones, 234 Miss. 461, 106 So.2d 134 (1958). See also Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752 (Miss. 1955). The method of meeting that separate maintenance is left to the husband. Jones, supra. However, this is not to say that the chancery court is without authority to impose liens to insure such payment in cases where equity demands it, as in cases where waste and dissipation of the property by the husband is shown.
Likewise, as a chancery court has no authority to divest title to property on an order of separate maintenance, it likewise lacks authority to vest title to property on separate maintenance. As a wife is entitled to no greater rights in a decree of separate maintenance, she is entitled to no less. Amis, supra; Bridges, 330 So.2d at 264.
These conclusions are in accord with the purpose and nature of this equitable remedy; it is not a suit to dissolve the marriage and its assets. Accordingly, the decree of the chancery court is reversed insofar as it divested Mrs. Novella H. Thompson of her undivided one-half interest in real property and her title to the $750,000.00 in Certificates of Deposit at Trustmark Bank. In reversing these adjudications, this court renders the appellant's entitlement to property as held prior to the chancery decree.
It is noted that the appellee relies upon cases dealing with the authority of the chancery court to divest title to property upon a dissolution of a marriage. This court has previously distinguished that line of cases from the facts of this case and reiterates their nonapplicability to separate maintenance awards.

IV.
Regarding the remaining assignments of error, the court does not address the discovery violation in view of the holding on the preceding issue regarding division of the marital assets.
Lastly, regarding the amount of the separate maintenance, this Court notes no cross-appeal regarding the wife's entitlement. Mrs. Thompson challenges the amount as an alternative argument in the event the court rejected her argument regarding the divesting of her title to property. Therefore, this Court does not address the future adequacy of the monthly amount, having restored to her her other property. The appellant's brief noted that Mrs. Thompson would not need maintenance if her property were restored.
As to the circumstances of Mrs. Thompson pending this appeal, it is reflected in the record that a supersedeas was granted by this Court together with a stay and injunction against Mr. Thompson for prosecution of his motion against his wife for contempt pending disposition of her appeal. Therefore, this case is now remanded to the chancery court for proceedings consistent with this opinion.
REVERSED AND RENDERED IN PART; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., not participating.