## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00426-SCT

*GEORGE L. HONTS A/K/A GEORGE LEROY HONTS*

*v.*

*BONNIE L. HONTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/94 |
| TRIAL JUDGE: | HON. ROGER C. CLAPP |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | C. JASON WOMACK |
| ATTORNEY FOR APPELLEE: | MICHAEL P. YOUNGER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 3/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/7/97 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. George Honts appeals the lower court's award of separate maintenance to his wife of 15 years, Bonnie. In addition to an award of separate maintenance, the lower court ordered a division of the retirement and savings account jointly accumulated during the marriage and granted Bonnie the right to record three deeds on properties allegedly owned by both George and Bonnie in Oklahoma free and clear from any claims of George. We affirm the lower court's order except as to the division of the jointly-accumulated account, which we reverse and render.

¶2. George and Bonnie were married on March 17, 1979. After about thirteen years of marriage, the couple separated in July of 1993. No children resulted from the union.

¶3. George and Bonnie executed a joint agreement for separate maintenance and also a separation of property settlement agreement in which they agreed to sell their house and divide the money received. They also agreed to divide other assets which they had accumulated. Subsequently, George backed out of the agreement.

¶4. The evidence at trial showed that George was the main breadwinner. At the time of separation, he

was employed with Liebert at $32,000 per year but was terminated from this position in December 1993. At that point George's income was (and still is) derived from retirement pensions from Rockwell ($600/month) and the Air Force ($1200/month). George received a total of $1800 a month in retirement income. George also testified that Bonnie handled all the financial business affairs of the household.

¶5. Bonnie testified at trial that during the marriage and after the separation she had no way to support herself. However, she also testified that in the past she has made about $330 to $400 a year painting wood figurines and/or earrings. There was also evidence that Bonnie had serious health problems.

¶6. Evidence adduced at trial disclosed that the parties had a joint I.R.A. account during the marriage with Tinker Credit Union in Oklahoma that contained $38,000. This account contained $68,000 at the time of separation, but George withdrew $30,000 around that time. The account was the result of saving George's retirement checks. George testified that Bonnie received the monthly statement from Tinker Credit Union. George further stated that he never got in the business of saving due to the simple fact that "she [Bonnie] was good at it, much better than I would [sic]."

¶7. George's and Bonnie's testimony indicated that some other accounts with Tinker existed as well. Bonnie received some inheritance money which she deposited in these accounts. Later, she withdrew this money.

¶8. Another point of contention between the parties was the ownership of some rental homes in Oklahoma. George had executed three quitclaim deeds to three parcels of property in Oklahoma and ruled that Bonnie could record said deeds free and clear from any and all claims of George.

¶9. Bonnie had no earned income but had potential for about $500 in rent or by conversion of the real estate assets. Her expenses were approximately $1200 per month. Bonnie also had the potential for income from her painting. Therefore, the trial judge found that Bonnie would have to come up with $300 on her own leaving her with a need of $800 or $900. The court found that George had the ability to work somewhere and that if he lived frugally and saved his money from the I.R.A., he could make the support payment. He further found that although Bonnie had more assets, she had no income, and because it was George's decision not to go through with the separation agreement and his choice to separate, the award was proper. His final order shows that he determined $800 per month an appropriate amount of support.

¶10. The trial judge found other Tinker Credit Union accounts of the parties to be joint cumulations of the marriage, for instance, the wife's inheritance or the husband's retirement pensions. He essentially found these accounts to be pooled or merged. He further found reasonable motivations for the recent withdrawals in the I.R.A. account containing $37,000. The judge divided this account so as to give George a $10,000 offset because of the tax consequences of cashing in the I.R.A.. His division was $23,500 to George, and $13,500 to Bonnie.

¶11. The Court has stated that the allowance of separate maintenance and the amount to be awarded are for the most part matters within the discretion of the chancellor. Further, these decisions will not be reversed unless they are against the overwhelming weight of the evidence. ***Tanner v. Tanner***, 481 So. 2d 1063, 1064 (Miss. 1985).

**¶12.** George asserts that the monthly support he must pay Bonnie is excessive and oppressive, because it does not provide for a decent standard of living for him. George relies on *McKay v. McKay*, 312 So. 2d 12 (Miss. 1975). In that case the Court held that in determining the amount of the award some consideration must be given to the rights of the husband to lead as normal a life as possible. This right must be weighed in connection with the reasonable needs of the wife, considering the customary mode of living during the marriage. *Id.* at 14.

¶13. In *McKay* the husband received $402 per month from his job and $286 Navy retirement per month for a total of $688. The wife took home $260 per month from her job. Out of the husband's income, he was required to pay $100 per month child support, $267 for the house payment, $50 per month utilities for the house, leaving him $258 per month for room, board, clothing, automobile expense and other necessities. The Court found the award excessive. This decision was based mainly on the extraordinarily large house payment. *Id.*

¶14. George maintains that he is likewise oppressed because Bonnie has more of the marital assets than he does. However, he withdrew $30,000 of the $68,000 I.R.A. with Tinker Credit Union. He has a relatively new Chrysler convertible with plates bearing the name "Love Bucket." He also has a retirement income of some $1800 per month. He recently paid for a seven-day cruise, accompanied by a female friend for whom he also paid, and plans to take another one soon. The court found that George had lived fairly well off his income and savings. George clearly has the ability to pay the amount awarded and maintain a decent standard of living. If need be, he is only 61 and can find some type of job to at least bring his income up to $2000 per month.

¶15. Bonnie has the rental properties in Oklahoma (which George deeded to her), one-half of the other Tinker accounts and a van. She does have a large quantity of assets, but George also has some assets in addition to a steady income.

¶16. *Daigle v. Daigle* set out the six criteria to be considered in setting awards of separate maintenance: 1) the health of husband and the wife; 2) their combined earning capacity; 3) the reasonable needs of the wife and children; 4) the necessary living expenses of the husband; 5) the fact that the wife has free use of the home and furnishings; and 6) other such facts and circumstances bearing on the subject that might be shown by the evidence. 626 So. 2d So. 2d 140, 145 (Miss. 1993). Neither party asserts that the trial court erred in applying these factors. The record indicates that the trial court addressed these factors at trial. The court recognized that Bonnie had the potential to earn some income; so, he did not grant her support equal to the full amount of her monthly expenses. The court noted that George was 61 and had the ability to at least earn some small amount of income in addition to his pension. The court also found that Bonnie should be able to come up with some monthly income on her own. The marital home was sold, and its profits equally divided. In essence the court considered the *Daigle* factors. It is clear that George was able to maintain a decent standard of living with the amount he withdrew from the I.R.A., evidenced by his new car and the cruise he took with his friend. There is no overwhelming evidence that any inequity was afforded George by the support award. The Chancellor did not abuse his discretion on the award of separate maintenance.

¶17. George asserts that the trial court also erred by divesting George of his undivided one-half interest in the properties in Oklahoma and erred in divesting him of his retirement and savings

account with Tinker Air Force Base Credit Union. In support of his argument, George cites a 1988 decision of the Court wherein the Court held that a chancery court has no authority to divest title to property on an order of separate maintenance. *Thompson v. Thompson*, 527 So. 2d 617, 623 (Miss. 1988); *Williams v. Williams*, 528 So. 2d 296, 298 (Miss. 1988). George correctly cites the law. A chancellor cannot divest title to property in an action for separate maintenance. The record before us indicates that Bonnie holds quit claim deeds to the Oklahoma property. The lower court did not divest title to the property in the case sub judice. The validity of the deeds were not for the court below to determine, nor could the court order their recordation. If the deeds or recordation are an issue, it is for another time, not at this moment of separate maintenance. There should be no ruling by the lower court concerning the parcels of property in Oklahoma.

¶18. As for the I.R.A. in question, testimony from George indicates that this was a joint account. At trial the chancellor stated that he did not think he could divide the property in a suit for separate maintenance, yet he proceeded to do just that. The chancellor divided the account in his order. Bonnie received $13,500, and George received $23,500 -- an extra ten thousand to account for taxes. The division of the joint marital asset in this suit for separate maintenance was error. The lower court abused its discretion on this issue.

¶19. We affirm the amount of separate maintenance awarded. As to the property, George had executed quitclaim deeds to the property in Oklahoma; that issue was not properly before the court below other than in considering the assets of the parties. However, the division of the joint I.R.A. was error. Marital assets are not to be divided in judgments for separate maintenance.

¶20. **AFFIRMED IN PART; REVERSED AND RENDERED ON THE DIVISION OF THE JOINT I.R.A.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**