662 So.2d 179 (1995)
Elton KENNEDY
v.
Grace KENNEDY.
No. 94-CA-00540-SCT.
Supreme Court of Mississippi.
September 28, 1995.
Shirley Payne, Dennis L. Horn, Horn & Payne, Jackson, for appellant.
Samuel E. Farris, Hattiesburg, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
For the third time, the saga of Elton and Grace Kennedy's brief union comes before this Court. A second marriage for both parties, the two separated after less than eighteen months. Kennedy now seeks relief from a separate maintenance order initially entered by the Marion County Chancery Court in 1989 and affirmed by this Court without written opinion in Kennedy v. Kennedy, 557 So.2d 1197 (Miss. 1990) (Kennedy I). In Kennedy v. Kennedy, 650 So.2d 1362 (Miss. 1995) (Kennedy II), the Court considered Elton Kennedy's appeal of the chancellor's October 22, 1992 order holding him in contempt of the February 24, 1989 separate maintenance order and denying his request to modify the obligations specified therein. *180 We affirmed the chancellor's finding that Kennedy was in contempt of court, but found that he erred in not reducing or terminating Grace Kennedy's award of separate maintenance from and after the October 6, 1992 hearing in light of Kennedy's reduced income. Kennedy II, 650 So.2d at 1370. Grace Kennedy's petition for rehearing was denied on March 23, 1995.
Kennedy now appeals a May 6, 1994 memorandum order of the Marion County Chancery Court, dismissing his December 3, 1993 petition to reduce or terminate his support obligations to Grace Kennedy. Finding that one spouse should not be required to deplete his separate estate when his income has dropped below the level of his separate maintenance obligations, we reverse and remand for proceedings consistent with this opinion.

I.
Elton and Grace Kennedy were married on July 26, 1986 and subsequently separated on February 27, 1988. On February 24, 1989, the Marion County Chancery Court granted Grace Kennedy's Complaint for Separate Maintenance and ordered Elton Kennedy to pay $1,500.00 per month in separate maintenance as well as all reasonable medical and dental expenses, and to provide her with the use of a 1987 Chrysler, with Kennedy to pay the car loan, license tag fees and insurance. She was also awarded $3,000.00 in attorney fees. The chancellor's order was affirmed by this Court in Kennedy I.
On December 2, 1993, Kennedy petitioned the Marion County Chancery Court for termination or reduction of his support obligations. A hearing was held on April 20, 1994. Kennedy sought to establish that both his income and assets had further dwindled since the entry of the October 1992 order, denying reduction or termination of support payments, which was reversed and remanded by this Court in Kennedy II.
At the time of the April, 1994 hearing, Kennedy was sixty-two years old. He had retired two years previously from SONAT after the oil field in which he had worked was sold. He then was sent offshore to work as a roustabout, a job he was physically unable to perform. Kennedy had filed for Social Security benefits and indicated that he would begin drawing $861.00 per month beginning in May, 1994. In contrast to his approximate income from oil and gas royalties, alone, of $95,000.00 and $142,000.00 in 1987 and 1986, respectively, Kennedy's 1993 tax return indicated a total income of $26,660.00, with $24,498.00 coming from pensions and annuities. He testified that $18,000.00 of that came from cashing in an IRA and the remainder, from his regular pension pay.
Kennedy entered the marriage with a variety of assets both accumulated while he worked and inherited from his late first wife. He had acquired more than 3,512 shares of SONAT stock in his pension plan, which, at the time of the hearing, was valued at approximately $29.00 per share and paid dividends of $800.00 per quarter. He had lived for thirty years on 312 acres of land, a gift from his first wife's family, half of which was devoted to timber and half to farming. He estimated that the farm land was worth about $350.00 per acre, and $100 to $150 more per acre for the timberland. On cross-examination, he disagreed that the timber on the property was worth about $150,000.00. He and his son jointly owned thirty cows, which he valued at $550.00 to $600.00 per pair. Finally, he owned interests in three mineral wells, inherited from his first wife. By mineral deed dated June 5, 1990, Kennedy had attempted to transfer and assign those interests to his two children, but the transaction was apparently set aside after Grace Kennedy successfully filed suit to block it. Kennedy testified, however, that the $500.00 per month in royalty income from the oil and gas wells had been going to his children, although the income was still attributable to him.
In his April 20, 1994 financial declaration, Kennedy stated a monthly income of $827.53. He listed monthly expenses, including the $1,500.00 separate maintenance payment to Grace Kennedy, totaling $2,653.85. He testified that he had met the shortfall, including more than $15,000.00 in arrearage payments to Grace, by cashing in $60,000.00 in CDs and IRAs since 1989. Further, he had more than $5,000.00 in one savings account and $1,200.00 in another, which, he testified, was *181 all that remained from the sale of a house he had bought from Grace, and had been used to pay her monthly maintenance. Kennedy, who had been paying Grace $500.00 per month since December, 1993, likewise stated that if he continued to pay that amount and deplete his cash resources, he would have to grow his own food and sell the cows and his SONAT stock. After hearing Kennedy's testimony, the chancellor dismissed his case, charging him with costs of the proceedings and an $800.00 contribution toward Grace's attorney fees, stating:
It may well be that the law does not require one such as Elton to render himself a pauper in providing support by way of separate maintenance for his wife, but in Elton's case he is a long way from being deprived of all his worldly possessions to fulfill his support obligation. He is not without the means and ability to meet his obligation, and the Court is of the opinion that he has not demonstrated that which entitles him to the relief sought.
By decree dated January 23, 1995, Elton Kennedy was granted a divorce in the District Court of Clark County, Nevada. Although not made a part of the record in this case, a copy of the decree was filed with this Court on February 21, 1995, in connection with the Petition for Rehearing filed in Kennedy II. In rendering our opinion today, we do not consider this since it is not before us.

II.
Kennedy first asks this Court to consider whether and to what extent one spouse should be required to deplete his or her assets in order to obtain a modification of a separate maintenance decree when that spouse's monthly income has dropped below the amount of the separate maintenance obligation. Citing Daigle v. Daigle, 626 So.2d 140, 146 (Miss. 1993), for the proposition that in a separate maintenance action, a chancellor does not have the authority to divest title from one spouse and invest it in the other, Kennedy contends that the order, which, in effect, requires him to liquidate real property and other assets to meet his monthly support obligations, amounts to a divestiture of title. Grace Kennedy counters merely that Kennedy could find another job or mortgage some of his property to make the payments necessary to support her.
We consistently have held that because a spouse's entitlement to separate maintenance does not extend to the division of marital assets, a chancellor is not authorized to transfer title to real estate from one spouse to the other. Daigle, 626 So.2d at 146; Thompson v. Thompson, 527 So.2d 617, 622-623 (Miss. 1988); Jones v. Jones, 234 Miss. 461, 106 So.2d 134 (1958). In both Thompson and Daigle, we recognized that:
[n]or should the decree award to the wife any part of the husband's estate in fee, except such as may be consumable in its use and necessary for her reasonable support. The legal duty of the husband to support his wife does not require that he convey any of his property to her. During cohabitation the wife has the legal right to live in the husband's home, but he is under no legal duty to convey it to her.

* * * * * *
A decree for separate maintenance being, in effect, one for the specific enforcement of the husband's legal duty to support his wife, arising out of the marriage contract, the court should not, under the guise of enforcing that contractual duty, deprive him of any of his lands or other specific property, where not necessary for the enforcement of that duty ...
Thompson, 527 So.2d at 622, quoting Amis, Divorce and Separation in Mississippi § 193 (1st ed. 1935). See also Daigle, 626 So.2d at 146. While the amount of separate maintenance should provide for the wife as if the couple were still cohabiting, as the Thompson Court pointed out, "the allowance should not unduly deplete the husband's estate." Id. at 622.
Although the chancellor has not ordered Kennedy to transfer title to any property to Grace Kennedy, we agree with his argument that the order requiring him to pay separate maintenance in an amount exceeding his monthly pension and other income has the same practical effect. Were Kennedy forced to sell his land or his stock, it could be said that he would be deprived of *182 his lands or other specific property or that his estate would be unduly depleted by his efforts to meet his monthly obligations. Sale of his land or stock would serve only to reduce the sources of Kennedy's income from stock dividends, timber and cattle sales, further decreasing the cash flow available to meet his separate maintenance obligations. "Equitable principles must govern all cases." Thompson, 527 So.2d at 622. In this case, equity requires that Kennedy's separate maintenance obligations not exceed the income derived from his property and not necessitate liquidation of these income-producing assets.
Both Daigle and Thompson emphasize that an order for separate maintenance does not extend to a division of marital assets. Daigle, 626 So.2d at 146; Thompson, 527 So.2d at 622. Likewise, although we have adopted the principle of equitable distribution with regard to the division of marital assets upon divorce, we have not extended those principles to the order of separate maintenance. Assuming arguendo that they were applicable, there would be a strong argument against requiring Elton Kennedy to liquidate his assets in order to provide separate maintenance for his estranged wife. The only property subject to equitable distribution is marital property, that is, "any and all property acquired or accumulated during the marriage." Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss. 1994). The property which Grace Kennedy contends that Kennedy could mortgage, the transfer of which (to his children) she successfully blocked, and which provides the income to pay her monthly maintenance, was property which he acquired or accumulated prior to the marriage  inherited from his first wife or accumulated through his job before he retired. We have recognized that inherited property is not marital property and not subject to equitable distribution. Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss. 1994). Therefore, even if equitable distribution were made applicable to separate maintenance, it would be contradictory to those principles to require Elton Kennedy to use the lands and mineral leases inherited from his first wife to support a second wife from whom he separated after only eighteen months of marriage.
Under the circumstances of this case, particularly considering the brevity of the marriage, the absence of proof of Grace Kennedy's needs and assets, and the evidence that the bulk of the assets in question were inherited from Kennedy's first wife, equity should not require Kennedy to deplete his separate estate (and his children's inheritance) to meet the demands of a separate maintenance order entered at a time when he enjoyed a substantially higher income.

III.
At the conclusion of the hearing, the chancellor took judicial notice of the current timber prices in South Mississippi, stating as follows:
I'm going to say to you though on the record that I think the Court is entitled to take judicial notice of that which is common knowledge or can be common knowledge, and I say for the record that there is published a Mississippi Market Bulletin which is a regular publication of the Department of Agriculture of the state of Mississippi and it gives timber prices for the northern, central and southern Mississippi in each publication. Pine saw timber in the southern part of Mississippi is bringing $400 to $430 or $440 per thousand standing timber for current prices. That's public knowledge and I think the Court can take judicial notice of that and I can consider that in considering what Mr. Kennedy's assets are and what he has available to meet adjudged obligations.
The chancellor also took judicial notice of the dramatic decline in natural resource prices, observing that crude oil had dropped from a high of $30.00 a barrel to $9-10.00 a barrel, commenting that these were matters of common knowledge and publication on a daily basis.[1] Kennedy now contends that he was not given notice of the court's taking of judicial notice and that "the specific weight and volume of the timber or logs on Mr. Kennedy's land are not a matter of common knowledge *183 and are therefore not a proper subject of judicial notice." Thus, he charges that the chancellor's findings were based on personal knowledge and opinion, rather than on facts in the record.
Kennedy bases the first part of his argument on a pre-Rules case, Eidt v. City of Natchez, 421 So.2d 1225 (Miss. 1982), wherein this Court held that "[f]airness and due process require that whenever a court at the trial level is contemplating taking judicial notice of a particular fact or facts as a basis for calculations and fact findings, notice must be afforded to the party or parties who will be affected by the taking of such notice." Id. at 1231. However, Miss.R.Evid. 201, which governs judicial notice of adjudicative facts, provides in subsection (e) only for an opportunity to be heard. Specifically, Rule 201(e) states as follows:
A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
The Comment to Rule 201(e) further notes:
Subsection (e) provides for a procedure not formerly required in Mississippi. By providing an opportunity for a hearing on the matter of judicial notice, the rule is a safeguard for fairness. If a party requests an opportunity to be heard, under the rule he must be granted that opportunity. Because frequently there is no advance notice that judicial notice will be taken, a party has a right to be heard even after judicial notice has been taken. (emphasis added).
Clearly, advance notice that judicial notice will be taken on some matter is not required by the rule; however, it is better to provide advance notice so that all parties will be able to make the necessary preparations. Further, the rule contemplates that advance notice of judicial notice will not always be given, and to that extent, allows for a hearing on the matter noticed after notice has been taken. Although Kennedy's attorney timely made a general objection to the taking of judicial notice, he failed to avail himself of the opportunity to request a hearing on the matter or to proffer any evidence contrary to the judicial notice. Therefore, because the provisions of Rule 201 were not followed, the chancellor cannot be held in error for taking judicial notice of the pine saw timber prices in South Mississippi. At best, it was harmless error since we are reversing and remanding the case.

IV.
Under the facts of this case, considering especially the brevity of the marriage, that Kennedy's income is derived, to a great extent, from income produced by the assets in question, that all of his assets were acquired prior to the marriage and largely inherited from his first wife, and that there is no evidence in this record of Grace Kennedy's current financial status, we find that the chancellor erred in refusing to reduce a separate maintenance obligation which Kennedy cannot meet without liquidating his separate estate. Accordingly, as we determined with regard to the chancellor's 1992 order, the 1994 order refusing to reduce or terminate Kennedy's support obligations is reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE, P.J., and BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PRATHER, P.J., dissents with separate written opinion joined by SULLIVAN and PITTMAN, JJ.
PRATHER, Presiding Justice, dissenting:
I respectfully dissent from the majority opinion. For the following reasons, the chancellor's decision was correct and should be affirmed.
The standard of review in these cases is well-settled. "On appeal, this Court will not overturn the chancery court unless its findings were manifestly wrong." Daigle v. Daigle, 626 So.2d 140, 144 (Miss. 1993). I agree with the majority that "equitable principles must govern all cases." See Thompson v. Thompson, 527 So.2d 617, 622 (Miss. 1988). *184 However, in this case, the chancellor was in the best position to observe the parties and their situations and to apply the appropriate "equitable principles." I respectfully suggest that the majority opinion fails to state any findings that were manifestly in error to require the overturning of the chancellor's decision.
I agree with the majority that the principles of equitable distribution are inapplicable to separate maintenance actions. Primarily, I do so because the legal purpose for separate maintenance and equitable distribution are diametrically opposed. Separate maintenance "is a `court-created equitable relief' based upon the marriage relationship. It is well-established that `a decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.'" Kennedy v. Kennedy, 650 So.2d 1362, 1367 (Miss. 1995) (citations omitted). On the other hand, this Court has placed importance upon giving the parties to a divorce a sense of finality. See Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994).
Clearly, the divorce law principle of equitable distribution does not apply in separate maintenance cases. For this reason, comparing the chancellor's decision in this case to a divestiture of property is inappropriate. Ordering a person to make a periodic payment for separate maintenance is neither the analytical nor the functional equivalent of divesting that person of property. Separate maintenance is a monetary obligation  not a charge against real property. To say otherwise would encourage others to put considerable assets in non-liquid investments, and thereby avoid their legal obligation to provide separate maintenance. The chancellor was correct in preventing Mr. Kennedy from doing so in the case sub judice.
Respectfully, I would therefore affirm the chancellor's ruling.
SULLIVAN and PITTMAN, JJ., join this opinion.
NOTES
[1] Kennedy, however, made no objection to and does not appeal the chancellor's taking of judicial notice of this fact, one which clearly was in his favor.