MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. The Lowndes County Chancery Court granted Carolyn Lee Diehl’s claim for separate maintenance from her husband, Jere Lee Diehl, following the dismissal of Carolyn’s divorce complaint. Jere appeals to this Court, averring that the chancery court erred by not taking Carolyn’s inherited assets into consideration. Finding no error with the chancery court’s judgment, we affirm.
 

 FACTS
 

 ¶ 2. Jere and Carolyn married in 1987 and resided together in Columbus, Mississippi until Jere moved out of the marital home in 2006. Jere currently resides in Dublin, Georgia, and Carolyn continues to reside in the couple’s home in Columbus. No children were born of this marriage. Carolyn, who has been married once before, has two adult children from her previous marriage; the record does not indicate whether Jere, who has been married twice before, has any children of his own.
 

 ¶ 3. Both have health problems. Jere, a Vietnam veteran, who was sixty-four years of age at the time of trial, suffers from post-traumatic stress syndrome, diabetes, and a heart condition. Carolyn, age sixty, who underwent gastric bypass surgery shortly before trial, has existing health difficulties as well.
 

 ¶ 4. Following his retirement from the military, Jere worked for Brislin Ah' Conditioning for approximately fifteen to sixteen years until he retired in 2002.
 
 [1]
 
 His monthly adjusted gross income is approximately $5,500. He receives three monthly checks: (1) social security benefits, including disability; (2) 100% Veterans Affairs (VA) disability; and (3) Combat-Related
 
 *155
 
 Special Compensation (CRSC) disability. Carolyn is employed with the Lowndes County Department of Health. Her monthly adjusted gross income is approximately $1,200; she anticipates that if she retires at age sixty-two, she will receive monthly payments in the amount of $824 (not including social security benefits).
 

 ¶ 5. The marital home in Columbus has an existing mortgage balance, which Jere estimated on his Uniform Chancery Court Rule 8.05 financial form to be $22,300. Carolyn, however, estimated the balance at $33,000. The undisputed monthly mortgage payments are $438, which Carolyn has been paying without any assistance from Jere since October 2007.
 

 ¶ 6. Jere rents a mobile home in Georgia, and pays $450 a month in rent. He drives a 2005 Jeep Grand Cherokee that has a loan balance of $21,712 and a value of $13,000. His monthly car payments are $550. His 8.05 financial declaration indicates that his living expenses total $2,387, which includes his rent and car payments. Carolyn drives a 1997 Buick LaSabre that has no loan balance and is valued at $1,570. Her 8.05 financial form indicates that her monthly living expenses total $3,222, which includes the house payment.
 

 ¶ 7. Following the death of her mother in April 2005, Carolyn inherited a condominium in Richmond, Virginia, valued at $169,000. Carolyn’s thirty-five-year-old daughter resides in the condominium rent free, but she pays the maintenance fees, taxes, and utilities. Carolyn also inherited various stocks and bonds, all of which have been liquidated over time. The record does not disclose how much exactly Carolyn inherited, but of the initial amount inherited, $67,000 remained at the time of trial. Since October 2007, Carolyn has had to use some of the money, which sits in a savings account, to assist with her expenses because she has not received any support from Jere.
 
 [2]
 

 ¶ 8. According to a witness who testified at trial on behalf of Carolyn, prior to the separation, Jere and Carolyn, for the most part, treated each other with “love,” although their behavior toward each other was sometimes “harsh.” Due to Jere’s diabetes, Carolyn tried to make him eat right, and she would sometimes raise her voice or “fuss” at him about his eating habits.
 

 ¶ 9. Carolyn testified that Jere did not know how to cook, and he would not always eat healthy. Every day she would go home during her lunch break and prepare his meals, or the two of them would go out to eat. She stated that she was concerned about his health and tried to be careful about his feelings.
 

 ¶ 10. Jere testified that he left Carolyn because of an incident that took place one night while he and Carolyn were out eating dinner. He had “made a mess,” and Carolyn chastised him for it. According to Jere, on the way home from the restaurant, Carolyn told him she wanted a divorce. The following day, April 26, 2006, the two of them were having lunch at Barnhill’s restaurant, and Carolyn again “raised Cain” with him. Jere told her that he had had enough. He said Carolyn asked him to leave again, and this time he gave in and moved out of the marital home.
 

 ¶ 11. Carolyn had a different interpretation of what transpired that day. Carolyn testified that she did not ask Jere for a
 
 *156
 
 divorce, and reiterated to the chancellor that she did not want a divorce. She stated that while at the restaurant, with no forewarning, Jere told her he was leaving her tomorrow. Out of anger, she said that she told him, why wait until tomorrow. She then recanted and begged him to go home so they could talk about it, but he refused. She tried to go back to work, but she was too upset and went home. When she arrived at the house, Jere was already gone. Carolyn later found out that Jere had previously withdrawn money placed in their joint credit union account, which led her to believe that Jere’s decision to leave her was pre-planned.
 

 ¶ 12. The chancellor found Carolyn’s testimony more credible and held that Carolyn was without fault in Jere’s willful abandonment; as such, she was entitled to separate maintenance. In determining how much separate maintenance to award Carolyn, the chancellor applied the factors described by the supreme court in
 
 Honts v. Honts,
 
 690 So.2d 1151, 1153 (Miss.1997): “(1) the health of the husband and the wife; (2) their combined earning capacity; (3) the reasonable needs of the wife and children; (4) the necessary living expenses of the husband; (5) the fact that the wife has free use of the home and furnishings; and (6) other such facts and circumstances.” The chancellor found as follows:
 

 The health of both parties is not good. Them combined earning capacity is substantially more than [Carolyn’s] individual income as [her] net monthly income is only approximately 20% of [Jere’s] net monthly income. [Carolyn’s] reasonable needs far exceed that of her net monthly income of $1,200.00. Her 8.05 financial form lists living expenses that total $3,220.00. Based on [Jere’s] 8.05 financial form, even after all of his living expenses are taken into account, he has approximately $2,000.00 remaining to do with as he wishes. [Carolyn] does have free use of the marital home and its furnishings, but she has also been responsible for the mortgage, taxes and insurance for the same since October 2007, because [Jere] has provided no financial support. As to the inheritance that [Carolyn] received from her mother, the Court recognizes that she has access to these funds to assist in her living expenses. However, quoting from
 
 Bell on Mississippi Family Law,
 
 1st ed, § 2.03, “separate maintenance requires support at the standard of living of the marriage, while in many divorces alimony is aimed at assisting the recipient to reenter the workforce.”
 

 1113. The chancery court concluded that an award of separate maintenance in the amount of $1,800, to be paid monthly pending further order of the court, was appropriate.
 

 STANDARD OF REVIEW
 

 ¶ 14. We review domestic-relations matters under the limited substantial-evidence/manifest-error rule.
 
 Evans v. Evans,
 
 994 So.2d 765, 768(¶ 9) (Miss.2008) (citing
 
 Giannaris v. Giannaris,
 
 960 So.2d 462, 467(¶ 8) (Miss.2007)). A chancellor’s findings will not be disturbed on appeal when supported by credible evidence and not manifestly wrong.
 
 Newsom v. Newsom,
 
 557 So.2d 511, 514 (Miss.1990).
 

 DISCUSSION
 

 ¶ 15. Jere contends that the chancery court did not fully consider Carolyn’s inherited assets in determining her need for separate maintenance, thereby allowing Carolyn to reap a windfall. Jere does not contest the chancery court’s finding of fault; rather, he disputes the amount of the award and/or Carolyn’s actual need for it. He argues that even assuming that Carolyn requires separate maintenance,
 
 *157
 
 the chancery court completely ignored that Carolyn has inherited assets totaling approximately $360,000. Jere maintains that Carolyn admitted that she inherited a condominium worth $169,000, and that she allows her daughter, who appears to be in good health, to reside in the residence, rent free. Jere submits that by requiring him to pay separate maintenance, the chancery court is, in effect, forcing him to not only subsidize Carolyn, “but by flow through, he is theoretically, financially subsidizing her daughter.” Thus, he asks this Court to what extent, if any, should the chancery court have taken Carolyn’s assets into consideration in determining her award of separate maintenance.
 

 ¶ 16. The chancery court’s authority to grant separate maintenance to a wife is subject to a finding of “(a) separation without fault on the wife’s part, and (b) willful abandonment of her by the husband with refusal to support her.”
 
 Bridges v. Bridges,
 
 830 So.2d 260, 262 (Miss.1976) (citation omitted). Separate maintenance is a court-created remedy, and “[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance for her until such time as they may be reconciled to each other.”
 
 Thompson v. Thompson,
 
 527 So.2d 617, 621 (Miss.1988) (citation omitted). As a court of equity, “[t]he chancery court has equity powers to determine the amount of maintenance needed for the abandoned wife[.]”
 
 Id.
 
 (citing
 
 Johnston v. Johnston,
 
 182 Miss. 1, 179 So. 853, 853-54 (1938)). The purpose of the award is “to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered, as she would have received in the home, if the parties had continued normal cohabitation!)]”
 
 Bridges,
 
 330 So.2d at 263 (citation omitted).
 

 ¶ 17. The amount of the award should not be so great “as to unduly deplete the husband’s estate or earning capacity.”
 
 Id.
 
 at 262-63. Because a decree for separate maintenance is merely an enforcement of the same rights which the wife had before the separation, the award “should not confer on the wife any greater rights than she would have had if the cohabitation had continued.”
 
 Id.
 
 at 263. “Equitable principles must govern all cases.”
 
 Thompson,
 
 527 So.2d at 622.
 

 ¶ 18. We decline to entertain Jere’s computations on appeal with regard to how much he says Carolyn actually inherited from her mother; the record neither discloses the amount Carolyn inherited nor supports Jere’s figures. Based on the chancellor’s findings, which the record fully supports, at the time of trial, Carolyn’s inherited assets consisted of a condominium, valued at $169,000, and money contained in a savings account in the amount of $67,000, which came from liquidated securities.
 

 ¶ 19. Jere’s argument is that with these particular assets Carolyn needs no assistance from him in meeting her expenses. Though he does not expressly say so, it is clear that Jere means to convey that he unfairly is being made to compensate Carolyn for her decision to permit the property’s potential to go unrealized, i.e., by neither selling it or renting it out.
 

 ¶ 20. The law is clear; separate maintenance is an equitable remedy not a dissolution of a marriage.
 
 Thompson,
 
 527 So.2d at 623. The courts have no authority to divest title to property from either spouse in a separate maintenance action, whether it be marital or nonmarital property.
 
 See, e.g., Kennedy v. Kennedy,
 
 662 So.2d 179, 182 (Miss.1995). Here, because
 
 *158
 
 the chancellor is without authority to order Carolyn to sell the condominium, the value of the condominium, rightly, was a non-factor in the chancellor’s decision with regard to the amount of Carolyn’s award of separate maintenance.
 

 ¶ 21. Similarly, we find no merit in Jere’s proposition that he essentially is being forced to support Carolyn’s daughter due to Carolyn’s decision to allow her daughter to live in the condominium rent free. This was the situation at the time of the separation. As such, it can be said that Carolyn’s ability to do this for her daughter was based in part on Carolyn’s standard of living prior to the separation. Reducing Jere’s payment obligation to somehow correspond with the amount of rental income that he contends Carolyn is allowing to go unrealized in this instance, both would derogate the rights Carolyn enjoyed before the separation and would release Jere from his full responsibility to provide for Carolyn’s well-being thereafter.
 
 See, e.g., Thompson,
 
 527 So.2d at 623 (“As a wife is entitled to no greater rights in a decree of separate maintenance, she is entitled to no less.”) The chancellor did not do so, and we affirm her decision.
 

 ¶ 22. Likewise, and for similar reasons, we find no error in the chancellor’s decision not to take the money Carolyn had in savings into consideration in determining the amount of the award.
 
 Id.
 

 ¶ 23. Accordingly, we find the separate maintenance award in the amount of $1,800 per month just and equitable in light of Carolyn’s expenses and needs and Jei-e’s ability to satisfy the amount.
 

 ¶ 24. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J„ CONCURS IN RESULT ONLY.
 

 [1]
 

 . Upon retirement from Brislin, Jere received over $35,000, which he withdrew in August 2002.
 

 [2]
 

 . The chancery court entered a temporary order in September 21, 2006, in which Jere was ordered to pay Carolyn the sum of $ 1,700 per month in temporary alimony. Jere's obligation to pay alimony terminated upon the entry of the chancery court's order dated October 12, 2007, whereby Carolyn's complaint for divorce was dismissed.